UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 15-1551 JGB (DTBx)** | Date | September 24, 2015 |
|---|---|---|---|
| Title | *Andrea Moppin v. Los Robles Regional Medical Center, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) DENYING Plaintiff's Motion to Remand the Case to California State Court; and (2) VACATING the September 28, 2015 hearing (IN CHAMBERS)**

Before the Court is Plaintiff Andrea Moppin's Motion to Remand the Case to California State Court. (Doc. No. 13.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; Local Rule 7-15. After considering all papers submitted in support of and in opposition to the motion, the Court DENIES Plaintiff's Motion to Remand. The September 28, 2015 hearing is VACATED.

## I.   BACKGROUND

On May 27, 2015, Plaintiff Andrea Moppin ("Plaintiff") filed a putative wage and hour class action against Defendants Los Robles Regional Medical Center ("Los Robles") and Trustaff Travel Nurses, LLC ("Trustaff") in California state court. ("Complaint," Doc. No. 1-1.) The Complaint alleges the following causes of action against Defendants: (1) failure to provide reporting time pay; (2) failure to pay overtime wages at the appropriate rate; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to furnish complete and accurate wage statements; (6) failure to timely pay wages upon termination or resignation; (7) violation of the Private Attorneys General Act ("PAGA"); and (8) Unfair Business Practices. (Id.)

Trustaff answered Plaintiff's Complaint on July 30, 2015, (Doc. No. 1-4), and on July 31, 2015, filed a Notice of Removal pursuant to the Class Action Fairness Act ("CAFA"), ("Notice of Removal," Doc. No. 1). On August 7, 2015, Los Robles filed its Answer. (Doc. No. 10.) Plaintiff filed a Motion to Remand the Case on August 31, 2015. ("Motion," Doc. No. 13.)

Trustaff opposed Plaintiff's motion on September 4, 2015. ("Opp'n," Doc. No. 15.) Plaintiff filed a reply memorandum on September 14, 2015. ("Reply," Doc. No. 16.)

## II. LEGAL STANDARD

CAFA vests federal district courts with original jurisdiction of any class action in which minimal diversity of citizenship exists between at least one member of the putative class and at least one defendant, the class consists of at least 100 members, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). A defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014). Evidence establishing the amount in controversy is only required when the plaintiff contests, or the court questions, the defendant's allegation. (Id.)

When a plaintiff contests a defendant's allegation that the amount in controversy exceeds $5 million, a defendant seeking removal must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional threshold. Dart Cherokee, 135 S. Ct. at 553-54. A defendant can satisfy this burden by submitting evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). The amount-in-controversy requirement is "tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

The removal statutes are construed restrictively, however, and the district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941); 28 U.S.C. § 1447(c). However, no presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court. Dart Cherokee, 135 S. Ct. at 554.

## III. DISCUSSION

Plaintiff argues that Trustaff has failed to prove by a preponderance of the evidence that the amount in controversy is greater than $5 million. (Motion at 3.) Trustaff disagrees. (Opp'n at 1.)

### A. PAGA Penalties

In its Notice of Removal, Trustaff includes in its calculation of the amount in controversy Plaintiff's claim for PAGA penalties. (Notice of Removal ¶¶ 31-34.) However, the Ninth Circuit has recently determined that amounts sought pursuant to non-class action claims, including claims for penalties under PAGA, cannot be aggregated to meet the amount-in-controversy requirement for purposes of CAFA removal. Yocupicio v. PAE Group, LLC, 795

F.3d 1057, 1062 (9th Cir. 2015). Trustaff does not dispute this. Accordingly, the Court will not consider the alleged $2,842,700 in PAGA penalties claimed in the Notice of Removal.

### B. Labor Code Section 226

Labor Code section 226[1] states that employers are required to provide an accurate, itemized statement in writing each pay period detailing, among other things, all wages earned, hours worked, and all applicable hourly rates in effect during that period. Cal. Lab. Coe § 226(a). If the employer violates any of the provisions in section 226, each individual employee is entitled to $50 for the initial pay period in which a violation occurred and $100 for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000 per employee. Cal. Lab. Code § 226(e). Thus, an individual employed for at least 41 pay periods wherein each wage statement contained inaccurate information would be entitled to the statutory maximum penalty of $4,000.

In Plaintiff's complaint, she defines the "Wage Statement Class" as "[a]ll California citizens employed by Defendants as hourly-paid non-exempt employees who, during the relevant statutory period, were subject to Defendants' policies and practices regarding wage statements." (Complaint ¶ 24(e).) Plaintiff claims that "[a]t all times herein, Defendants intentionally and willfully failed to furnish Plaintiff and the class members with" accurate wage statements. (Id. ¶ 77.) Defendants' wage statements were allegedly inaccurate "as a consequence of, among other things, (a) Defendants' established policy and/or practice of failing to provide reporting time pay, (b) Defendants' established policy and/or practice of failing to pay overtime wages at the appropriate rate; (c) Defendants' established policy and/or practice of failing to provide all meal periods, (d) Defendants' established policy and/or practice of failing to authorize and permit all rest periods." (Id. ¶ 79.)

Trustaff calculates section 226 penalties in the amount of $1,329,250. (Opp'n at 9.) It arrives at this calculation as follows: Trustaff had 94 non-exempt employees in California who were actively employed for at least 41 pay periods since May 27, 2014.[2] (Declaration of John Ganster[3] in support of Trustaff's Opp'n ("Ganster Decl."), Doc. No. 15-2 ¶ 5.) Their potential

---

[1] Unless otherwise noted, all references to "section" shall refer to the California Labor Code.

[2] Plaintiff filed her Complaint in state court on May 27, 2015. (Complaint.) California imposes a one year statute of limitations for statutory penalties, including the penalties provided for in section 226. Cal. Code Civ. Proc. § 340. Accordingly, the relevant period for calculation of the amount in controversy for this claim is May 27, 2014 to May 27, 2015.

[3] The Court finds that the Declaration of John Ganster is the kind of "summary-judgment-type" evidence contemplated by the Ninth Circuit in Ibarra. 775 F.3d at 1197. Ganster described his employment relationship with Trustaff, detailed the software systems he accessed to retrieve the data relied upon, and declared that he "utilized the custom reporting functions of those systems" in retrieving said information, information which is "kept in the ordinary course of business." (Ganster Decl. ¶ 2.) Accordingly, the Court finds his declaration does not lack (continued . . . )

penalties for inaccurate wage statements – assuming a 100% violation rate – is the statutory maximum of $4,000 each for a total of $376,000. (Mot. at 9.) Further, Trustaff employed 675 non-exempt employees in California for at least one, but less than 41, pay periods since May 27, 2014, and those employees were actively employed for a total of 9,870 payroll periods since May 27, 2014. (Ganster Decl. ¶ 5.) Their potential for inaccurate wage statements – again, assuming a 100% violation rate – is $50 each for their initial pay periods for a sub-total $33,750 and $100 each for their subsequent pay periods for a subtotal of $919,500 (9,195 x $100). (Opp'n at 9.) Thus, Trustaff claims a total of $1,329,250 for Plaintiff's inaccurate wage statement claim. (Id.)

The Court finds Trustaff's calculation is reasonable. Courts in this district have found the amount in controversy is satisfied where a defendant assumes a 100% violation rate based on allegations of a "uniform" illegal practice, or other similar language, and where the plaintiff offers no evidence rebutting this violation rate. See e.g., Amaya v. Consolidated Container Company, LP, No. 2:15–cv–03369–SVW–PLA, 2015 WL 4574909 at *2 (C.D. Cal. July 28, 2015); Unutoa v. Interstate Hotels and Resorts, Inc., No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512 at *2-3 (C.D. Cal. March 3, 2015); see also Ibarra, 775 F.3d at 1199 (suggesting that an allegation that the defendant "universally, on each and every shift" would be sufficient to ground an assumed 100% violation rate).

Trustaff's assumption of a 100% violation rate of section 226 is supported by allegations in the Complaint. The Complaint alleges Defendants have "uniformly and systematically… failed and continue to fail to timely furnish complete and accurate itemized wage statements in violation of Labor Code section 226." (Complaint ¶ 2(e), emphasis added.) Further, it states, "[a]t all times herein, Defendants intentionally and willfully failed to furnish Plaintiff and the class members with" accurate wage statements. (Id. ¶ 77, emphasis added.) That language is not ambiguous. It accuses Defendants of issuing inaccurate wage statements "at all times" and in regards to both Plaintiff and the class members.

Plaintiff states that her use of the phrase "at all times" does not actually mean that "all wage statements were universally inaccurate." (Mot. at 8.) She supports this seemingly incongruous statement by arguing that her section 226 claim is derivative of her claims for failure to pay reporting time wages, failure to pay overtime wages, and failure to provide meal and rest breaks. (Id.) It is true that the language in the Complaint pertaining to the derivative claims is limiting and does not allege that Defendants committed these violations each and every pay period.[4] However, the Complaint states, "Defendants' wage statements were rendered

---

( . . . continued)
foundation and is properly supported by personal knowledge. Cf. Townsend v. Brinderson Corp., No. CV 14–5320 FMO, 2015 WL 3970172, *5 (C.D. Cal. June 30, 2015).

[4] Plaintiff's claim for failure to pay reporting time states, "[o]n one or more occasions, Plaintiff and members of the Reporting Time Class" were not properly compensated in accordance with the law. (Complaint ¶ 33, emphasis added.) Plaintiff's claim for failure to pay overtime wages at the appropriate rate states, "Plaintiff and members of the Overtime Rate Class routinely" worked overtime but were not properly compensated for it. (Id. ¶ 42, emphasis (continued . . . )

inaccurate as a consequence of, <u>among other things</u>, Defendants' established policy and/or practice" of failing to provide reporting time pay, overtime wages at an appropriate rate, and meal and rest periods. (Complaint ¶ 79, emphasis added.) The Complaint's use of the phrase "among other things" plainly contemplates that Defendants' wage statements were inaccurate for reasons independent of the derivative claims. Therefore, Plaintiff's attempt to circumscribe the phrase "at all times" fails.[5]

     For these reasons, the Complaint's claim for violations of section 226 explicitly alleges universal violations as to the Wage Statement Class "at all times" during the statutory period. See <u>Amaya v. Consolidated Container Company, LP</u>, No. 2:15–cv–03369–SVW–PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015) (finding that a defendant can rely on the complaint's allegations to ground assumed rates of violation); <u>see also Mejia v. DHL Express (USA), Inc.</u>, No. CV 15-890 GHK, 2015 WL 2452755at *4 (C.D. Cal., May 21, 2015) (finding a defendant's use of a 100% violation rate reasonable where the plaintiff's complaint did not contain any allegations to suggest that a 100% violation rate is an impermissible assumption). The Complaint's section 226 claim accounts for $1,329,250 of Trustaff's asserted amount in controversy.

### C. Labor Code Section 203

---

( . . . continued)
added.) Plaintiff's claims for failure to provide meal and rest periods also alleges Defendants "failed to <u>always</u> comply" with the requirements of the Labor Code and Industrial Welfare Commission Wage Orders. (<u>Id.</u> ¶¶ 57, 59, 69, 71, emphasis added.)

    [5] The Court is also finds inapposite Plaintiff's reliance on <u>Amaya v. Consolidated Container Company, LP</u>, No. 2:15–cv–03369–SVW–PLA, 2015 WL 4574909 (C.D. Cal. July 28, 2015). (Motion at 10.) In <u>Amaya</u>, the plaintiff successfully rebutted the defendant's assumption of a 100% violation rate for wage statement penalties. 2015 WL 4574909 at * 4. The defendant asserted that Amaya's complaint suggested that an entire category of data was absent from the wage statements, thereby supporting the defendant's use of a 100% violation rate. <u>Id.</u> In response, Amaya submitted "a large quantity of his own wage statements," demonstrating that there was no required category of information left out. <u>Id.</u> Instead, Amaya argued his claim was based on his employer's failure to pay all wages due. <u>Id.</u>

    This case is not analogous. Nowhere in Plaintiff's Complaint is it alleged that Defendants omitted an entire category of data from its wage statements. In fact, the opposite is true. Plaintiff's overtime claim alleges only that the overtime rate of pay was calculated inaccurately, not that the class was denied overtime altogether. (Complaint ¶42.) Further, Plaintiff does not allege that her claims for failure to pay for reporting time or provide meal and rest breaks would warrant their own line items on the wage statement. Accordingly, the Court need not consider the single wage statement Plaintiff submitted in support of her motion. (<u>See</u> Doc. No. 13-2.)

Labor Code section 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or quits, the wages of the employee shall continue to accrue as a penalty from the date due from the date due up to and including thirty days thereafter. Cal. Lab. Code § 203. The Complaint alleges Defendants "violated Labor Code section 203 by willfully failing to pay, without abatement or reduction, all final wages owed in accordance with Labor Code sections 201 and 202." (Complaint ¶ 7(f).) The Complaint further alleges "Defendants had a consistent and uniform policy, practice and procedure of willfully failing to pay the earned wages of Defendants' former employees…" (Id. ¶ 89.) Plaintiff's section 203 claim is derivative of the Complaint's claims for failure to provide reporting time pay, failure to pay overtime wages at the appropriate rate, and failure to provide meal and rest breaks.

Trustaff calculates the amount in controversy for Plaintiff's section 203 claim is $3,692,656.80. (Opp'n at 8.) Of Trustaff's non-exempt employees in California, 861 employees either quit or were discharged between May 27, 2012 and April 27, 2015.[6] (Ganster Decl. ¶ 3.) The average base hourly rate of pay for those 861 employees at the time of their termination is $17.87. (Id.) Most of the 861 employees, including Plaintiff, were scheduled to work 12-hour shifts, and all of the 861 employees were scheduled to work shifts of at least 8 hours. (Id.) Trustaff calculated its estimate of the amount in controversy by multiplying the average hourly rate of pay by 8 hours a day for each of the 861 employees terminated in the applicable statutory period. (Opp'n at 8.) Trustaff assumes the terminated employees were owed the maximum penalty of 30 days wage. (Id.)

It is not unreasonable to assume that every non-exempt employee terminated during the statutory period would have experienced at least one violation – and therefore would not have been paid certain wages due – because the Complaint alleges that Defendants' non-exempt employees: (1) "routinely" worked overtime but were not compensated at the appropriate overtime rate, (Complaint ¶ 42); (2) pursuant to "Defendants' pattern, practice and uniform administration of corporate policy regarding illegal employee compensation," (id. ¶ 34), "[o]n one or more occasions" were not compensated for reporting to work (id. ¶ 33); and (3) "as a matter of Defendants' established company policy" worked during meal periods, (id. ¶¶ 57, 59), and rest breaks (id. ¶¶ 69, 71). See Ibarra, 775 F.3d at 1198. (holding that the amount-in-controversy requirement can be calculated "using reasonable assumptions underlying the defendant's theory of damages exposure"). Other courts have allowed 100% violation rate assumptions in similar situations where plaintiffs alleged a "laundry list" of potential violations.

---

[6] The statute of limitations in California for claims based on the nonpayment of wages is three years. Pineda v. Bank of Am., N.A., 50 Cal. 4th 1389, 1398 (2010) (affirming that Cal. Code Civ. Proc. § 338 applies to section 203 claims). Not only are Plaintiffs' claims for failure to pay overtime and failure to pay reporting time claims for nonpayment of wages, but the claims for failure to provide meal and rest breaks are also claims for nonpayment of wages as section 226.7 requires employers to pay employees an additional hour of pay for each workday that a meal or rest break is not provided. See Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1111 (2007) (finding that the "one additional hour of pay" due to employees pursuant to section 226.7 is a "wage" and not a "penalty").

See Varsam v. Lab. Corp. of Am., No. 14CV2719 BTM JMA, 2015 WL 4199287, at *4 (S.D. Cal. July 13, 2015); see also Mejia, 2015 WL 2452755, at *5–6 (allowing 100% violation rate assumption for waiting time violations). Further, "defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation." Unutoa, 2015 WL 898512 at *3; see also Sanchez v. The Ritz Carlton, No. CV 15-3484 PSG, 2015 WL 4919972, at *3 (C.D. Cal. Aug. 17, 2015).

Notably, Plaintiff fails to assert any different rate of violation or submit evidence indicating a different rate of violation. See Unutoa, 2015 WL 898512 at *3 (denying motion to remand, noting "Plaintiff fails to assert any different rate of violation or submit evidence indicating a contrary rate…"); see also Lopez v. Aerotek, Inc., No. SACV 14–803 CJG, 2015 WL 2342558, at *3 (S.D. Cal. May 21, 2015) (denying motion to remand, noting "although afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely").

Contrary to Plaintiff's assertion, it is not unreasonable for Trustaff to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations. The Complaint alleges Defendants willfully failed to pay Plaintiff and members of the Final Pay Class their entire wages due and owing at the time of their termination and failed to pay those sums for "up to thirty (30) days thereafter." (Complaint ¶ 90.) See Tajonar v. Echosphere, LLC, No. CV 14-2732 LAB, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty day penalty). Further, Plaintiff submits no evidence indicating that Trustaff at any time paid a single member of the Complaint's "Final Pay Class" wages due after the class member's termination but before the thirty day statutory period expired. Accordingly, the Court finds Trustaff's assumption of the thirty day maximum wage penalty reasonable. The amount in controversy for the Complaint's section 203 claim is $3,692,656.80.

Because the amount in controversy for the section 203 and section 226 claims totals $5,021,906.80, the Court need not analyze Trustaff's estimate of attorneys' fees. The Court also notes that this calculation does not take into account Plaintiffs' claims for failure to provide reporting time pay, failure to pay overtime wages at the appropriate rate, and failure to provide meal and rest periods. Accordingly, the amount in controversy is in fact much higher than $5 million.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand the Case to California State Court. (Doc. No. 13.) The September 28, 2015 hearing is VACATED.

**IT IS SO ORDERED.**