UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-1551 JGB (DTBx)** | Date | September 12, 2016 |
| Title | *Andrea Moppin v. Los Robles Regional Medical Center et al.* | | |

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Shehnaz M. Bhujwala | Sarah N. Drechsler |

**Proceedings:**     Order GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification (Dkt. No. 39) **(HEARING HELD)**

Before the Court is Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification. ("Motion," Doc. No. 39.) No opposition has been filed. The Court heard argument on the matter on September 12, 2016. For the reasons that follow, the Court GRANTS the Motion.

## I.     INTRODUCTION

On May 27, 2015, Plaintiff Andrea Moppin ("Plaintiff" or "Moppin") filed this putative wage-and-hour class action in state court against Defendants Los Robles Regional Medical Center ("Los Robles") and Trustaff Travel Nurses, LLC ("Trustaff"). (Complaint, Dkt. No. 1-1.) Moppin, a former employee of Defendants, alleges the following causes of action against Defendants: (1) failure to provide reporting time pay; (2) failure to pay overtime wages at the appropriate rate; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to furnish complete and accurate wage statements; (6) failure to timely pay wages upon termination or resignation; (7) violation of the Private Attorneys General Act ("PAGA") Cal. Labor Code § 2689 et seq.; and (8) Unfair Business Practices. (See Complaint.) Plaintiff brings this action on behalf of herself and on behalf of a putative class of similarly situated employees. (Id. ¶ 23.)

Trustaff answered Plaintiff's Complaint on July 30, 2015 and removed the action to this Court on July 31, 2015 pursuant to the Class Action Fairness Act ("CAFA"). (Not. of Removal,

Dkt. No. 1).  On August 7, 2015, Los Robles filed its answer.  (Dkt. No. 10.)  Moppin filed a motion to remand the case to state court on August 31, 2015, which the Court denied on September 24, 2015.  (Dkt. No. 17.)  On December 4, 2015, Los Robles and Moppin filed a joint stipulation to release all putative class claims and representative claims against Los Robles without prejudice, while still maintaining Plaintiff's individual claims against Los Robles.  (Dkt. No. 23.)  The Court granted this stipulation on December 7, 2015.  (Dkt. No. 24.)

On April 15, 2016, Plaintiff filed a notice of class-wide settlement and a joint stipulation to vacate the trial dates.  (Dkt. No. 32.)  The Court approved the stipulation, vacated the pretrial and trial dates, and ordered Plaintiff to file a motion for preliminary approval of the class action settlement by June 13, 2016.  (Dkt. No. 33.)  Moppin and Trustaff twice stipulated to continue the deadline so that they could finalize the settlement agreement, which the Court approved.  (Dkt. Nos. 36, 38.)  Pursuant to the Court's July 20, 2016 Order, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification on August 8, 2016.  (Motion, Dkt. No. 39.)  The Court held a preliminary approval hearing on September 12, 2016.

## II.      THE SETTLEMENT AGREEMENT

Plaintiff submits a copy of the parties' Joint Stipulation of Class Action Settlement as Exhibit 1 to the Declaration of Raymond P. Boucher.  ("Settlement" or "Settlement Agreement," Boucher Decl., Ex. 1, Dkt. No. 39-2.)  The Settlement Agreement defines the Settlement Class as follows:

> All persons employed by Trustaff Travel Nurses, LLC as non-exempt temporarily assigned employees who were provided assignments at facilities in the State of California from May 27, 2011 through the date the Preliminary Approval Date.

(Id. § II.8.)

As a condition of the Settlement, Plaintiff seeks leave to file a First Amended Complaint ("FAC"), which adds a claim against Trustaff for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  (Id. § VI.2; see Proposed FAC ¶¶ 117-124, Dkt. No. 39-3.)  The FAC also revives some class claims against Los Robles, specifically all claims asserted in the FAC that are brought on behalf of Class Members who were employed by Trustaff during the Class Period and assigned to work at Los Robles Regional Medical Center.  (Id. § VI.2; see Proposed FAC ¶ 24.)  The Court will permit the parties to submit a stipulation to file the Proposed FAC on the condition that all parties sign on to the stipulation, including Los Robles.  The parties shall file their stipulation within 15 days of this Order.

### A. Financial Terms and Releases

In the Settlement Agreement, Trustaff continues to deny liability for the claims alleged in the Complaint. (Id. § IV.) Nevertheless, Trustaff agrees to pay a total settlement amount of $3,775,000 to resolve Plaintiff's claims and those of the proposed class. (Id. § II.18.) In exchange, Plaintiff and the Settlement Class Members will release all state and federal "claims, obligations, demands, actions, rights, causes of action, and liabilities asserted in the Lawsuit, or that are pled in or reasonably related to claims and potential claims described in the First Amended Complaint" that accrued between May 27, 2011 through the date of this Preliminary Approval Order. (Id. § XII.) The Settlement releases these claims as against both Trustaff and Los Robles, but it only releases claims against Los Robles to the extent such claims belong to Settlement Class Members who were assigned by Trustaff to work at Los Robles Regional Medical Center. (Id. § II.39.)

The Gross Settlement Amount of $3,775,000 is divided as follows. Trustaff will pay $15,000 for settlement of any and all claims for which penalties under PAGA may be sought or are otherwise available. (Id. § VIII.3.) Pursuant to the express requirements of Labor Code section 2699(i), $11,250 (75%) of the PAGA Penalty Payment will be allocated to the California Labor and Workforce Development Agency ("LWDA") and $3,750 (25%) will be allocated to the Settlement Class Members who submit timely, valid claims. (Id.)

The Settlement provides that Class Counsel, Raymond Boucher and Shehnaz Bhujwala of Boucher LLP and Sahag Majarian II of the Law Offices of Sahag Majarian II, shall receive 25% of the Gross Settlement Amount – $943,750 – as an award of attorneys' fees and up to $10,000 in litigation expenses. (Id. § IX.1.) The Settlement also provides that an estimated $25,000 of the Gross Settlement Amount will be used for claims administration costs. (Id.) Additionally, Trustaff has agreed to pay Plaintiff a Service Enhancement Payment of up to $17,500 for her work as the Class Representative. (Id. § VIII.5.)

Thus, the Net Settlement Amount—the amount from which funds will be distributed to Settlement Class Members who submit timely, valid claims—will be approximately $2,763,750. (Id. § II.26.) The payment for each individual Settlement Class Member who timely submits a valid claim will be calculated by dividing the number of work weeks all Class Members worked in California during the class period by the number of work weeks the individual Settlement Class Member worked and multiplying this number by the Net Settlement Amount. (Id. § VIII.4.) Each settlement Class Member who submits a timely, valid claim shall also receive his or her equal share of the $3,750 PAGA Penalty Payment. (Id.)

Additionally, Trustaff agrees that it is required to fund a minimum of 60% of the Net Settlement Amount for payment to Settlement Class Members, regardless of the claims rate. (Id.) This means that if the total value of timely submitted and valid claims is less than 60% of the Net Settlement Amount, each Settlement Class Member will also receive payment of his or her equal share of the difference between the total value of timely, valid claims and 60% of the Net Settlement Amount. (Id.)

### B. Claims Process

The parties have initially selected CPT Group, Inc. as the Claims Administrator, but may jointly select a different administrator, subject to Court approval. (Settlement Agreement § X.) The Settlement Agreement provides that within 15 days of the date of this Order, Trustaff will provide a list of all Class Members to the Claims Administrator. (Id. § X.3.) However, because the Settlement Agreement is contingent upon the filing of the Proposed FAC—which requires Los Robles to agree to revive some class claims against it that Plaintiff previously voluntarily dismissed—the Court will make a slight alteration to this timeline and direct Trustaff to provide the class list within 15 days of the filing of the FAC.

No later than fourteen days after receipt of the class list, the Claims Administrator will send a Notice Packet to all identified Class Members via U.S. mail. (Id. § X.4.) The Notice Packet will contain the Notice of Proposed Class Action Settlement, ("Notice," Ex. A), the Claim Form, (Ex. B), the Request for Exclusion form, (Ex. C), and a pre-printed return envelope addressed to the Claims Administrator. (Id. § II.28.) The Notice will contain data specific to each individual Class Member, including the Class Member's total work weeks worked during the Class Period, according to Trustaff's payroll records, and the Class Member's estimated Settlement Payment. (Notice at 5.) Upon receipt of the packet, Class Members will be able to challenge Trustaff's calculation of the amount of work weeks they worked during the class period by submitting documentation that supports a different number of work weeks. (Settlement § X.5.)

The Agreement contains detailed provisions for attempting to reach Class Members whose packets are returned to the Administrator as undeliverable or with a forwarding address, including mailing the packet to the forwarding address and performing reasonable address verification measures. (Id. § X.4.) A reminder postcard will be mailed 30 days after the original mailing date of the Notice Packet to all Class Members who have not yet returned a Claim Form, Request for Exclusion, or Notice of Objection. (Id. § X.22.) There will also be a settlement website that will be discoverable through internet searches.[1] (Id. § X.) The website will contain key information and documents regarding the Settlement, Class Members' rights, and relevant deadlines, and it will be capable of receiving online submissions of Claim Forms and Requests for Exclusion. (Id.)

The Notice will state that Class Members have 60 days from the date the Notice is mailed to submit a claim, request exclusion, or to serve and file an objection. (Notice at 6.) If, upon receipt of a Claim Form, the Claims Administrator determines that the form is not signed or

---

[1] The parties characterize this website as "notice by publication." (Settlement § X.) However, the discovery of this website via an internet search would require pre-existing knowledge of this settlement in the first place. Thus, absent actual publication—either through online or print newspapers or advertisements—the fact that the website will be discoverable through internet searches is insufficient to characterize it as "notice by publication."

lacks required information, the Claims Administrator will give the Class Member an opportunity to cure the defect. (Id. § X.10.)

Within ten days after the Response Deadline, the Claims Administrator will provide Trustaff and Class Counsel a list of the names of all Class Members who have timely and validly objected to the Settlement. (Id. § X.12.) The Administrator will also provide Trustaff and Class Counsel with data regarding the claims and requests for exclusion, which Trustaff and Class Counsel will then provide to the Court in the Motion for Final Approval of the Class Settlement. (Id.)

The Claims Administrator will maintain and operate the settlement website, distribute direct notice through the mail, operate a toll-free telephone line for communications with Class Members, create and maintain the Qualified Settlement Fund, issue Settlement Payment checks, and handle all tax issues. (Id.) As stated previously, the estimated cost of claims administration is $25,000. (Id. § IX.1.) If the actual cost of claims administration is less than this, the remaining funds shall be part of the Net Settlement Amount. (Id. X.1.)

### III.   LEGAL STANDARD[2]

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Court approval occurs in three steps, the first of which is a preliminary approval hearing. See Manual for Complex Litigation (Fourth) §§ 21.632 (2012). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). A court considers the following factors to determine whether a settlement agreement is potentially fair: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

Approval of a class action settlement requires certification of a settlement class. A court may certify a class if the plaintiff demonstrates that the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). See Fed R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed R. Civ. P. 23(a). Rule 23(b) requires that the class satisfy one of the following requirements: (1) prosecuting the

---

[2] All references to "Rule" are to the Federal Rules of Civil Procedure.

claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on ground that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication.  Fed. R. Civ. P. 23(b).  Courts have added to the federal rules a prerequisite that the class be ascertainable.  In re Northrop Grumman Corp. ERISA Litig., No. cv-06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011).

> IV.   **CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS**

The parties seek conditional certification, pursuant to Rule 23, of the Settlement Class, which they have defined as follows:

> All persons employed by Trustaff Travel Nurses, LLC as non-exempt, temporarily assigned employees who were provided assignments at facilities in the State of California from May 27, 2011 through the Preliminary Approval Date.

(Settlement Agreement § II.8.)  The parties also seek conditional certification of an FLSA Subclass, pursuant to 29 U.S.C. § 216(b).  For the reasons the follow, the Court will conditionally certify both the Rule 23 Settlement Class and the FLSA Subclass.

> A.   **Requirements of Rule 23(a)**

> 1. **Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  To be impracticable, joinder must be difficult or inconvenient, but it need not be impossible.  Keegan v. American Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012).  There is no numerical cutoff for sufficient numerosity, but forty or more members will generally satisfy the numerosity requirement.  Id.

Here, Trustaff has estimated that there are approximately 1,900 Class Members.  (See Boucher Decl. ¶ 22; see also Settlement Agreement § II.8.)  The Class is therefore sufficiently numerous.  Keegan, 284 F.R.D. at 522.

> 2. **Commonality**

The commonality requirement is met when the plaintiff's claims "depend upon a common contention… capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011).  Commonality does not require "that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'"  Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d

952, 957 (9th Cir. 2013) (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012) (emphasis in Abdullah)).

Sufficient common questions of law exist among the Class Members. Specifically, the Class Members' claims turn on the same issues of liability: whether Defendants failed to provide all reporting time pay; whether they failed to pay the correct overtime rate; whether the Class Members were provided all of their meal and rest breaks; and whether Defendants timely furnished complete and accurate wage statements. (Motion at 18; Boucher Decl. ¶ 23.)

Some questions of law or fact are relevant only to subsets of the Settlement Class, such as the class claim that Defendants failed to pay all final wages owed. (See Proposed FAC ¶¶ 87-92.) Questions of law and fact relevant to this claim only apply to former—not current—employees. Additionally, the parties propose a subclass for their FLSA claim, which will only apply to Class Members who affirmatively opt in to the FLSA cause of action. (Proposed FAC ¶ 24.) The fact that these common questions may not apply to every class member does not defeat certification. Hanlon, 150 F.3d at 1019. A class may be certified even if not perfectly tailored to every person who may have suffered the relevant harm. Id. The Court concludes that sufficient common questions exist to satisfy this requirement.

### 3. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named [p]laintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover N. Am., 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is a permissive standard. Hanlon, 150 F.3d at 1020. The claims of the named plaintiff need not be identical to those of the other class members. Alonzo v. Maximus, Inc., 275 F.R.D. 513, 523 (C.D. Cal. 2011).

Plaintiff Andrea Moppin's claims are reasonably co-extensive with those of absent Class Members. She was employed by Trustaff as a non-exempt, temporarily assigned employee and was provided work assignments during the Class Period at medical facilities in California, including Los Robles Regional Medical Center. (Boucher Decl. ¶¶ 26-27; Moppin Decl. ¶¶ 3-6, Dkt. No. 39-5.) This is the same as the proposed Class Members, who were all employed by Defendants as non-exempt, temporarily assigned employees and who all suffered substantially similar injuries, namely, insufficient compensation for all hours worked and deprivation of required meal and rest breaks. (See generally Proposed FAC.) This is sufficient to satisfy the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, courts are to inquire (1) whether the proposed class representative and class counsel have any conflicts of interest with the rest of the potential class, and (2) whether the proposed class representative and class counsel will prosecute the action vigorously on behalf of the class as

a whole.  See Hanlon, 150 F.3d at 1020; Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiff has no apparent conflicts of interest with any Class Members.  (Boucher Decl. ¶ 26; Majarian Decl. ¶ 6, Dkt. No. 39-4.)  As explained above, her claims and the claims of the Class Members are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158, fn. 13 (1982).  Moreover, Class Counsel have extensive experiences in prosecuting wage-and-hour class actions and have been appointed class counsel in numerous other class actions.  (Boucher Decl. ¶¶ 32-40; Majarian Decl. ¶¶ 2-5.)  To date, Plaintiff's counsel have demonstrated their ability to diligently represent the interests of the class in this action, (Boucher Decl. ¶¶ 40-41; Majarian Decl. ¶¶ 7-8), and Plaintiff has taken an active role as the Class Representative, (Moppin Decl. ¶¶ 8, 10).  Class Counsel have also declared that they have sufficient resources to vigorously pursue the claims on behalf of the Class.  (Boucher Decl. ¶ 40; Majarian Decl. ¶ 7.)  The Court therefore finds that Plaintiff and Class Counsel will adequately protect the interests of the Class.

### B. Ascertainability

Ascertainability is satisfied when it is "administratively feasible for the court to determine whether a particular individual is a member" of the proposed class.  In re Northrop Grumman Corp. ERISA Litig., No. CV 06-06213 MMM JCX, 2011 WL 3505264, at *7 (C.D. Cal. Mar. 29, 2011).

Here, the Class definition uses objective criteria that are verifiable from Defendants' records.  The Class consists of all persons employed by Trustaff as non-exempt, temporarily-assigned employees who were provided assignments at facilities in California from May 27, 2011 through the date of this Order.  (Settlement Agreement § II.8.)  Members of the Class can be definitively determined from Trustaff's payroll and personnel records.  (Id.; see also Boucher Decl. ¶ 22.)  The Class is thus sufficiently ascertainable.

### C. Requirements of Rule 23(b)

Certification is sought pursuant to Rule 23(b)(3).  (Mot. at 20-22.)  Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

First, the Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by a class action.  Hanlon, 150 F.3d at 1022.  A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims.  Id.  That plaintiffs may be owed different amounts of damages is not fatal to the 23(b)(3) prerequisite as long as the individualized damages are a matter of "straightforward accounting."  See In re Facebook, Inc., PPC Adver. Litig., 282 F.R.D. 446, 459 (N.D. Cal. 2012).

      Here, no separate adjudication is required to resolve individual claims. As noted above, the central questions are whether Defendants failed to provide all reporting time pay; whether they failed to pay the correct overtime rate; whether the Class Members were provided all of their meal and rest breaks; and whether Defendants timely furnished complete and accurate wage statements. (Motion at 18; Boucher Decl. ¶ 23.) These issues all relate to purported company policies instituted by Defendants. (Motion at 21.) "The existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof." Arrendondo v. Delano Farms Co., No. CV F 09-1247 LJO DLB, 2011 WL 1486612, at *15 (E.D. Cal. Apr. 19, 2011). This is particularly true here because although Class Members may be entitled to different amounts of compensation, the parties have provided a straightforward method of calculating those amounts: namely, by calculating how many work weeks each Class Member worked during the Class Period.

      Satisfying the second prong of Rule 23(b)(3) requires a class action to be a superior method of adjudication for resolving the controversy. See Fed. R. Civ. P. 23(b)(3). When undertaking this inquiry, courts consider factors such as (i) the individual class members' interest in controlling the litigation of separate actions, (ii) whether there is any pre-existing litigation of the controversy, (iii) the desirability of concentrating the litigation of the claims in the particular forum, and (iv) any difficulties that may arise from maintaining a class action. Fed R. Civ. P. 23(b)(3); accord Wolin, 617 F.3d at 1175. Where parties seek class certification for settlement purposes only, courts need not consider the final two factors which address trial manageability. Franco v. Ruiz Food Prods., Inc., No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *9 (E.D. Cal. Nov. 27, 2012).

      The facts relevant to this suit do not suggest that individual class members would have a strong interest in controlling the litigation of separate actions. There are approximately 1,900 Class Members, making individual adjudication of Class Members' claims impractical. As noted by Plaintiff, it is unlikely that Class Members would pursue individual cases given that their hourly rate of pay is relatively low. (Motion at 22.) See Meyer v. Am. Family Mut. Ins. Co., No. 3:14-CV-05305-RBL, 2015 WL 5156594, at *3 (W.D. Wash. Sept. 2, 2015) ("The alternative method of resolution available here is adjudication of individual claims for a small amount of damages, which would present a hardship to the class members.").

      Regarding the second factor—the existence of other litigation—the Court is aware that there is a proposed class and representative action pending against Los Robles in Ventura County Superior Court, Munden v. Los Robles Regional Medical Center, Case No. 56-2014-00454766-CU-OE-VTA, which was filed on June 27, 2014 and which, according to a stipulation filed with the Court, has "certain overlapping class and representative claims." (Dkt. No. 23 at 2.) At the Preliminary Approval Hearing, Class Counsel represented that there are a few putative class members in Munden whose claims against Los Robles overlap with claims released by the Class Members in the proposed Settlement in this case. The Court is concerned that this Settlement may prevent putative class members in Munden from recovering pursuant to any settlement or

final adjudication in that matter.  Although the Court does not find that this factor precludes preliminary approval of the Settlement, the Court hereby directs Class Counsel to inform the Court prior to the Final Approval Hearing of precisely which claims and which Class Members overlap with Munden.  Further, the Court places counsel on notice that it will review the final settlement agreement to ensure that no putative class members in Munden are precluded from rightfully recovering in that action, as it was filed before this action.

### D. FLSA Subclass

The parties define the FLSA Subclass as follows:

> All Settlement Class Members who timely return their respective Claim Forms and thereby are deemed to have opted into the action for purposes of FLSA, and thereby released any claims such as FLSA Settlement Class Members may have under the FLSA as to the Released Federal Law Claims Only.

(Settlement Agreement § II.17.)  Specifically, Plaintiff alleges that, in violation of 29 U.S.C. §§ 206(a), 207(a), and 255(a), Defendants: (1) intentionally failed to pay Plaintiff and the FLSA Subclass the applicable minimum wage for every hour worked in a work week; and (2) intentionally failed to pay Plaintiff and the FLSA Subclass overtime equal to 1.5 times each individual's rate of pay for all hours worked in excess of 40 hours per week.  (Proposed FAC ¶ 122.)

The only requirement for certification of FLSA collective actions is that putative class members be "similarly situated."  29 U.S.C. § 216(b).  Here, Plaintiff contends that the proposed FLSA subclass is similarly situated because all Subclass Members have the same dispute over underpayment of overtime compensation and minimum wages.  (Motion at 23.)  This is sufficient to satisfy the "similarly situated" requirement.  See Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) ("Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members") (citation omitted).  Thus, the Court will conditionally certify the FLSA Subclass.

### V. PRELIMINARY APPROVAL OF THE SETTLEMENT

At the Preliminary Approval phase, the Court need only decide whether the settlement is *potentially* fair.  Acosta, 243 F.R.D. at 386.  After the class members have been notified of the Settlement and given an opportunity to object, the Court will hold a formal fairness hearing to determine whether the Settlement is fair, reasonable, and adequate.  See Manual for Complex Litigation (Fourth) §§ 21.632-34 (2012).  A full fairness analysis is unnecessary until the Court conducts the final fairness hearing.  Campbell v. First Investors Corp., No. 11-CV-0548 BEN WMC, 2012 WL 5373423, at *4 (S.D. Cal. Oct. 29, 2012).

At this stage, the Court must determine whether the proposed settlement is "within the permissible 'range of possible approval' and thus, whether the notice to the [C]lass and the scheduling of the formal fairness hearing is appropriate." Campbell, 2012 WL 5373423, at *4 (quoting Alberto v. GMRI, Inc., 252 F.R.D. 652, 666 (E.D. Cal. 2008)). Courts presume fairness and reasonableness of settlement agreements that were the product of "non-collusive, arm's length negotiations conducted by capable and experienced counsel." In re Netflix Privacy Litig., No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013). If the settlement agreement "[1] is the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval," then preliminary approval should be granted. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### A. Product of Serious, Informed, Non-collusive Negotiations

For a court to approve a proposed settlement, "[t]he parties must… have engaged in sufficient investigation of the facts to enable the court to 'intelligently make… an appraisal' of the settlement." Acosta, 243 F.R.D. at 396 (quotation omitted). Between January and early April 2016, Plaintiff, Los Robles, and Trustaff served and responded to document requests and interrogatories and produced several hundred pages of responsive documents each. (Boucher Decl. ¶ 12.) In late March 2016, Plaintiff and Trustaff met and conferred over discovery issues and also agreed to explore private mediation. (Id. ¶ 13.) Counsel for the parties have investigated the law as applied to the facts discovered regarding Plaintiff's individual and class claims, the defenses thereto, and the damages claimed by the Class Members through Plaintiff. (Id.) The parties certainly have a clear idea of the strengths and weaknesses of their respective cases. See Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.").

On April 8, 2016, Plaintiff and Trustaff participated in private mediation before the Hon. Carl J. West (Ret.) of JAMS. (Boucher Decl. ¶ 14.) Pursuant to that all-day mediation and further negotiations over a material term of settlement involving Judge West that concluded on May 7, 2016, the proposed terms for this Settlement were reached. (Id.) The Court finds that the parties have engaged in substantial investigation of the facts and the applicable law, and further, that the settlement negotiations were at arm's length and were not collusive. This factor therefore weighs in favor of granting preliminary approval of the Settlement.

### B. No Obvious Deficiencies and Falls within Range of Possible Approval

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080. Plaintiff's counsel calculated that the maximum damages recoverable by Class Members

are approximately $6,247,911. (Boucher Decl. ¶ 28-30.) This figure takes into account estimates of the likelihood of victory by Plaintiff in a class certification motion and by Class Members on the merits should the case proceed to trial. (Id.) Trustaff contests liability, as well as the propriety of certification, and is prepared to vigorously oppose certification and defend against Plaintiff's claims if the action is not settled. Given the maximum potential damages and substantial risks in this case, the $3,775,000 Gross Settlement Amount represents a 60.4% recovery of the settlement value. Moreover, pursuant to the terms of the Settlement, Trustaff commits to paying a minimum of 60% of the Net Settlement Amount regardless of the total number or total value of claims made. (Settlement Agreement § VIII.4.)

The Class Members have not received notice of the Settlement Agreement nor had time for comment, therefore the Court cannot evaluate their reaction to the Settlement Agreement. However, given that the Settlement Agreement awards a substantial portion of the maximum estimated damages recoverable to the Class Members, regardless of the claims made, the Court believes this is preliminarily adequate for settlement purposes. The Court has identified no obvious deficiencies in the Settlement Agreement.

### C. No Preferential Treatment

As noted above, a settlement agreement must not "improperly grant preferential treatment to class representatives or segments of the class." Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Here, the Settlement Agreement treats Moppin similarly to the absent Class Members, except Moppin is entitled to receive a Service Enhancement Award of up to $17,500.

It is well-established that a court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation activities. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); see also Gripenstraw v. Blazin' Wings, Inc., No. 1:12-CV-00233-AWI, 2013 WL 6798926, at *14 (E.D. Cal. Dec. 20, 2013) (preliminarily determining that an incentive award appeared reasonable and appropriate). However, the Ninth Circuit has repeatedly directed district courts to "be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1164 (9th Cir. 2013); see also Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).

The Court has serious concerns that the $17,500 service enhancement award for Plaintiff is too high. Other courts in this circuit have approved much lower awards for similar settlement amounts. See e.g., Custom LED, LLC v. eBay, Inc., No. 12-CV-00350-JST, 2014 WL 2916871, at *10 (N.D. Cal. June 24, 2014) (preliminarily approving a $7,500 incentive award from $3,230,000 total settlement amount). Further, in cases where the total settlement amount was much higher, courts have approved relatively lower incentive awards. See In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (affirming a district court's approval of a $27,250,000 settlement where nine class representatives received $5,000 each); see also Glass

v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *1, 16-17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 incentive awards from $45,000,000 total settlement amount).

The Court does not find the incentive award so high as to render the Settlement Agreement per se unfair such that it defeats preliminary approval of the Settlement Agreement, but the Court puts the parties on notice that it will vigilantly scrutinize this award at the Final Approval Hearing.

### D. Attorneys' Fees and Costs

The Settlement Agreement states that Defendants will not oppose Class Counsel's request for an award of attorneys' fees of 25% of the Gross Settlement Amount, or approximately $943,750. (Settlement Agreement § IX.1.) The Ninth Circuit has established that an award of 25% of a plaintiff's total recovery is the "benchmark" for attorneys' fees calculations in contingency cases. Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000). Thus, the award Class Counsel seeks is in the range of possible approval.

The Settlement Agreement also states that Defendants will not oppose Plaintiffs' request for reimbursement of litigation expenses up to $10,000 and Claims Administration Costs, which are estimated to be approximately $25,000. (Settlement Agreement § IX.1.) The exact amounts of reimbursable costs are not known at this time; Plaintiff will file a motion for attorneys' fees and costs before the Court's final approval hearing. (Id. § VIII.2.)

At the preliminary approval stage, the Court need not make its final decision regarding the reasonableness of attorneys' fees and costs, but need only determine that the requested fees and costs are not the products of apparent collusion. See Tijero v. Aaron Bros., Inc., No. C 10-01089-SBA, 2013 WL 6700102, at *8 (N.D. Cal. Dec. 19, 2013); Graham v. Overland Solutions, Inc., No. 10-CV-0672 BEN BLM, 2012 WL 4009547, at *9 (S.D. Cal. Sept. 12, 2012). Here, there is no evidence of impropriety or collusion. Moreover, the fees and costs requested appear to be reasonable given the facts and circumstances of this case. The Court therefore finds that the requested attorneys' fees and costs do not prevent preliminary approval of the Settlement Agreement.

Overall, the above factors support the preliminary approval of the Settlement.

### VI.   NOTICE PLAN AND FAIRNESS HEARING

Rule 23(c)(2)(B) requires that the Court "direct to [C]lass members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after Notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1).

Overall, the Court finds the parties' proposal for providing notice to Settlement Class members adequately-planned and reasonable. Pursuant to the parties' request, the Court

appoints CPT Group, Inc. as the Claims Administrator for purposes of this action. The Court adjusts the parties' proposed schedule of dates as follows:

| **Description of Deadline** | **Proposed Deadline** | **Court's Deadline** |
|---|---|---|
| File Stipulated Request for Leave to File First Amended Complaint | 14 Calendar Days after Preliminary Approval Order | 14 Calendar Days after Preliminary Approval Order |
| Trustaff Provides Class Data to Claims Administrator | 15 Business Days after Preliminary Approval Order | 15 Business Days after filing of First Amended Complaint |
| Initial Mailing Date for Notice | 14 Calendar Days after Data Due | 14 Calendar Days after Data Due |
| Claims Administrator Sends Reminder Postcard | 30 Calendar Days after Initial Mailing | 30 Calendar Days after Initial Mailing |
| Deadline for Class Members to submit Objections, Disputes, Requests for Exclusion, & Claim Forms ("Response Deadline") | 60 Calendar Days after Initial Mailing | 60 Calendar Days after Initial Mailing |
| Report of Opt-Outs & Objections By Claims Administrator Due | 10 Calendar Days after Response Deadline | 10 Calendar Days after Response Deadline |
| Declaration of Due Diligence | 35 Calendar Days Prior to Final Approval Deadline | 35 Calendar Days Prior to Final Approval Deadline |
| Motion for Final Approval, Attorneys' Fees and Costs | 28 Calendar Days Before Final Approval Hearing | 28 Calendar Days Before Final Approval Hearing |
| Final Approval Hearing | None suggested | February 13, 2017 at 9:00 a.m. |

The above dates, as set by the Court, shall be incorporated into the Class Notice.

## VII.   CONCLUSION

The Court hereby conditionally certifies the Settlement Class solely for the purpose of settlement, appoints Andrea Moppin as the Settlement Class Representative, appoints the law firms of Boucher LLP and Law Office of Sahag Majarian II as Class Counsel, and orders dissemination of notice to the Settlement Class in the manner described in the Settlement Agreement, modifying the deadlines as described above. In sum, the Court GRANTS Plaintiff's Motion for Preliminary Approval of Class Action Settlement and ORDERS as follows:

1. For purposes of settlement only, the following Settlement Class is certified:

> All persons employed by Defendant Trustaff Travel Nurses, LLC as non-exempt, temporarily assigned employees provided assignments at facilities in the State of California from May 27, 2011 through September 12, 2016

2. The Court preliminarily appoints Plaintiff Andrea Moppin as Class Representative;

3. The Court preliminarily appoints the law firms of Boucher LLP and Law Office of Sahag Majarian II as counsel for the Settlement Class;

4. Within 14 days of the date of this Order, the parties shall file a stipulation for leave to file the proposed First Amended Complaint (FAC). Because the proposed FAC revives some class claims against Defendant Los Robles Regional Medical Center (Los Robles) that were previously voluntarily dismissed without prejudice, in order to obtain leave to file the FAC, all parties must stipulate to its filing, including Plaintiff Andrea Moppin, Defendant Trustaff Travel Nurses, LLC (Trustaff), and Defendant Los Robles Regional Medical Center.

5. Within 15 days of filing the FAC, Trustaff shall provide to the Claims Administrator a Class List containing the pertinent information of Class Members, which Trustaff will compile from their personnel records in good faith. The Class List shall be provided as a Microsoft Excel spreadsheet or some other computer-readable format and shall include: each Class Member's full name; last known mailing address; Social Security Number; and the total number of Work Weeks as defined in the Settlement. The Class List shall also include the sum of all Work Weeks for the Class. Because Social Security Numbers are included in the Class Information, the Court directs the Claims Administrator to maintain the Class List in confidence and not to disclose the Class List to Class Counsel, the Plaintiff, or any other Class Members without Trustaff's written consent or a court order.

6. The Court authorizes the retention of CPT Group, Inc. as the Claims Administrator for purposes of this settlement and preliminarily approves settlement administrative costs of $25,000, which shall be paid from the Gross Settlement Amount. The Settlement Administrator shall provide Class Counsel and Counsel for Trustaff with a list of any Class Members who have timely and validly requested exclusion from the Settlement, and a list of any Class Members who have timely and validly objected to the Settlement, within ten (10) calendar days after the Response Deadline. The Claims Administrator shall also detail the claims administration process and statistics regarding the claims, requests for exclusions and objections received in a declaration to be filed in support of Plaintiff's Motion for Final Approval and Motion for Attorneys' Fees, Litigation Expenses, and Service Enhancement Award. CPT Group, Inc. is directed to perform all other Claims Administration responsibilities set forth in the Settlement Agreement;

7. The Court hereby approves the proposed Notice of Class Action Settlement (Settlement Agreement, Ex. A), the Claim Form (Ex. B), and the Request for Exclusion Form, (Ex.

C), (collectively, "Notice Packet"), subject to the changes and limitations described in this Order.

8. The Court hereby approves the proposed procedure for exclusion from the settlement by the submission of a written statement requesting exclusion as specified in the Class Notice. Such exclusion request must be postmarked no later than the Response Deadline. Any Settlement Class Member who submits a valid and timely request for exclusion shall no longer be a Settlement Class Member, shall be barred from participating in the settlement, shall be barred from objecting to the settlement, and shall receive no benefit from the settlement, unless otherwise provided pursuant to the terms of the Settlement Agreement or by court order;

9. The Court hereby approves the proposed procedure for objection to the settlement. Any Settlement Class member objecting to the settlement must timely mail a Request for Exclusion Form to the Claims Administrator by the Response Deadline. Any Class member who fails to file and mail a timely written objection shall be foreclosed from objecting to the proposed Settlement Agreement, unless otherwise ordered by the Court;

10. The Court further ORDERS that Class Counsel shall file a Motion for Final Approval of the Settlement, with the appropriate declarations and supporting evidence, in time to be heard at the Final Approval Hearing on February 13, 2017;

11. The Court further ORDERS that each Settlement Class member who does not exclude himself/herself from the settlement shall be given a full opportunity to object to the proposed Settlement Agreement (and Plaintiff's request for attorneys' fees and expenses) and to participate at the Final Approval Hearing, which the Court sets to commence on **February 13, 2017 at 9:00 a.m.** in Courtroom 1 of the United States District Court, Central District of California – Eastern Division, 3470 12th Street, Riverside, California; and

12. The parties, their counsel, and the Claims Administrator are hereby ordered to comply with all terms of the Settlement Agreement, as modified herein.

**IT IS SO ORDERED.**