1   Raymond P. Boucher, State Bar No. 115364
      *ray@boucher.la*
2   Shehnaz M. Bhujwala, State Bar No. 223484
      *bhujwala@boucher.la*
3   Neil M. Larsen, State Bar No. 276490
      *larsen@boucher.la*
4   BOUCHER LLP
    21600 Oxnard Street, Suite 600
5   Woodland Hills, California 91367-4903
    Tel:   (818) 340-5400
6   Fax:   (818) 340-5401

7   Sahag Majarian II, State Bar No. 146621
      *sahagii@aol.com*
8   LAW OFFICES OF SAHAG MAJARIAN II
    18250 Ventura Boulevard
9   Tarzana, California 91356
    Tel:   818-609-0807
10  Fax:   818-609-0892

11  *Attorneys for Plaintiff/Class*
    *Representative Andrea Moppin and*
12  *Provisionally Certified Class*

13              **UNITED STATES DISTRICT COURT**

14      **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| 15  ANDREA MOPPIN, Individually, and On Behalf Of All Others Similarly Situated,<br><br>16  <br><br>17              Plaintiff,<br><br>18        v.<br><br>19  LOS ROBLES REGIONAL MEDICAL CENTER (d/b/a "Los Robles Hospital and Medical Center"), a California Corporation; TRUSTAFF TRAVEL NURSES, LLC, an Ohio Limited Liability Company; and DOES 1 through 50, Inclusive,<br><br>23              Defendants. | Case No. 5:15-CV-01551-JGB-DTB<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    February 13, 2017<br>Time:    9:00 A.M.<br>Crtrm.:  1<br><br>*Assigned to the Hon. Jesus G. Bernal and Magistrate David T. Bristow for Discovery Matters*<br><br>Complaint Filed:  May 27, 2015<br>Case Removed:    July 31, 2015<br>Trial Date:          Vacated |

24

25

26

27

28

1
2

# TABLE OF CONTENTS

**Page**

3    I.      INTRODUCTION ...................................................................................... 1

4    II.     BACKGROUND ........................................................................................ 3

5           A.    The Pleadings and this Court's Jurisdiction ............................. 3

6           B.    Early Litigation and Discovery Efforts..................................... 3

7           C.    Plaintiff and Trustaff's Mediation and Post-Mediation Efforts............. 4

8           D.    Preliminary Approval and Settlement Administration ........................ 5

9           E.    Determination of Fairness of Settlement Following Investigation
                   and Discovery.............................................................................. 6

10   III.    THE SETTLEMENT ................................................................................ 7

11          A.    Definition of the Proposed Class ............................................... 7

12          B.    Settlement Terms ........................................................................ 7

13          C.    Release ........................................................................................ 13

14          D.    Class Notice, Claim Form, Opt-Out and Objection Rights ................. 14

15          E.    Class Response to Proposed Settlement .............................. 15

16   IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
17           SETTLEMENT. ....................................................................................... 15

18          A.    The Strength of Plaintiff's Case............................................ 18

19          B.    The Risks, Expense, Complexity, and Duration of Further
                   Litigation .................................................................................... 19

20          C.    The Risk of Maintaining Class Action Status Throughout Trial.......... 20

21          D.    The Amount Offered in Settlement...................................... 20

22          E.    Sufficient Discovery and Investigation Was Completed to
23                 Warrant Settlement. .................................................................. 21

24          F.    Plaintiff's Counsel is Experienced and Endorses This Settlement....... 22

25          G.    Presence of a Governmental Participant ................................. 22

26          H.    Reaction of the Class to the Proposed Settlement ................ 22

27   V.      THE PROVISIONAL CERTIFICATION OF THE CLASS FOR
             SETTLEMENT PURPOSES SHOULD BE MADE FINAL. ...................... 23
28

VI.    THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE. ....... 24

VII.   CONCLUSION ................................................................................ 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 5:15-CV-01551-JGB-DTB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adoma v. University of Phoenix, Inc.,* 913 F.Supp.2d 964 (E.D. Cal. Dec. 20, 2012)..................................................................................................17

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981)..............................10

*Bellinghausen v. Tractor Supply, Co.*, 306 F.R.D. 245 (N.D. Cal. March 20, 2015)....................................................................................................11

*Brawner v. Bank of America*, 2016 WL 161295 (N.D. Cal. January 14, 2016)........11

*Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004) .....................18, 23

*Custom LED, LLC v. eBay, Inc.*, 2014 WL 2916871 (N.D. Cal. June 24, 2014)......10

*Dunk v. Ford Motor Company*, 48 Cal.App.4th 1794 (1996) ..................................16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...............................................24

*Fisher Bros. V. Cambridge-Lee Industries, Inc.*, 630 F.Supp. 482 (E.D. Pa. 1985)....................................................................................................22

*Garcia v. Gordon*, 2012 WL 5364575 (E.D. Cal. October 31, 2012)......................11

*Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)...........11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................16, 24

*In re Heritage Bond Litig.*, 546 F.3d 667(9th Cir. 2009) ........................................16

*In re Portal Software, Inc. Securities Litig.*,2007 WL 4171201 (N.D. Cal. November 26, 2007)..........................................................................20

*In re Processed Egg Products Antitrust Litig.*, 2012 WL 2885918 (E.D. Pa. 2012)....................................................................................................17

*In re Synocor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008)....................................16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............20

*La Fleur v. Medical Management Intern, Inc.*, 2014 WL 2967475 (C.D. Cal., June 25, 2014) ...............................................................................11

*Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217 (N.D. Cal. July 11, 2013).........22

*Lee v. JP Morgan Chase*, 2015 WL 12711659 (C.D. Cal. April 28, 2015).............11

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980) ................................16, 24

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615 (9th Cir. 1982) .................16

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. October 18, 2014) ......................11

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)..........................10, 21

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ......20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011)..................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96 (2nd Cir. 2005).........................23

**STATUTES**

28 U.S.C. § 1332(d)...................................................................................................3

28 U.S.C. § 1715.....................................................................................................22

29 U.S.C. § 216(b)....................................................................................................7

Cal. Bus. & Prof. Code §§ 17200 *et seq*...................................................................3

Cal. Lab. Code § 226 ................................................................................................3

Cal. Lab. Code § 226.7 .............................................................................................3

Cal. Lab. Code § 90.5(a)..........................................................................................10

Cal. Lab. Code §§ 201-203 .......................................................................................3

Cal. Lab. Code §§ 218 & 1198 ..................................................................................3

Cal. Lab. Code §§ 226.7 & 512 .................................................................................3

Cal. Lab. Code §§ 510 & 1194 ..................................................................................3

Cal. Civ. Code § 1542..........................................................................................9, 13

Class Action Fairness Act, 28 U.S.C. § 1715(b) ....................................................1, 2

Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq* .....................................5

**RULES**

Federal Rule of Civil Procedure, Rule 23................................................2, 17, 21, 23

**TREATISES**

Manual for Complex Litigation § 21.632 (4th ed. 2004) ....................................16, 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The Court should grant this unopposed motion for final approval of the settlement of this California wage and hour class action between Plaintiff Andrea Moppin ("Plaintiff") and Defendant Trustaff Travel Nurses, LLC ("Trustaff") because the proposed settlement is fair, reasonable, and adequate, the best practicable notice plan was completed, and notice requirements under the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), are being met.

The settlement[1] resolves the class and representative claims Plaintiff alleges in the First Amended Class Action Complaint (Doc. 43), as well as claims that could have been alleged based on the same set of facts, on behalf of "*all persons employed by Trustaff Travel Nurses, LLC as non-exempt, temporarily assigned employees who were provided assignments at facilities in the State of California from May 27, 2011 through September 12, 2016*" and an opt-in FLSA subclass (collectively, "Class"). In exchange for the release of claims, Trustaff agrees to pay up to $3,775,000, exclusive of its obligation to pay employer-side payroll taxes. After deductions for a service award, settlement administration costs, payment to the California Workforce Development Agency ("LWDA") for civil penalties under Private Attorney General Act ("PAGA"), and attorney's fees and costs awards to Class Counsel, Settlement Class members will receive significant monetary payments. The average settlement payout is $2,678.92 within a range that extends up to $20,117.84. *See* Declaration of Abel E. Morales on behalf of CPT Group, Inc. at ¶¶ 22-23.

The settlement is well-received by the Class. The participation rate is 30.31%, a fair and reasonable result for this relatively large class of 2,042 members. Morales

---

[1] *See* Exhibit 2 to Declaration of Raymond P. Boucher in Support of Plaintiff's Motions for Orders Granting Final Approval of Class Action Settlement and Attorneys' Fees, Costs, and Service Award: Joint Stipulation of Class Action Settlement ("Stipulation" or "Settlement Agreement" or "SA").

1

Decl. at ¶¶ 20-22. No Class member has objected to the proposed settlement, and only 28 persons opted-out. *Id.* at ¶¶ 5, 14, 16. The Class's response supports an order granting final approval of the settlement.

Additionally, notice requirements are substantially met. First, Trustaff timely provided notice in August 2016 to state officials under the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), and more than 90 days have passed without their objection. *See* Declaration of Sarah Drechsler Regarding CAFA Notices. On January 12, 2017, Trustaff provided notice to the U.S. Attorney General's office, after determining notice had not been sent to that one office. *Id.* Trustaff supplemented the notice on January 13, 2017 with a copy of the Preliminary Approval Order, and has followed up by phone to inquire whether the U.S. Attorney General intends comment on the settlement. *Id.* The Court's final approval may be conditioned on the passage without objection of 90 days from the date of this supplemental mailing. Second, the direct mail notice plan was the best practicable notice option, and was completed as directed with good results by CPT Group, Inc. *See* Morales Decl.

The Court already conditionally certified the Class and FLSA Subclass pursuant to Rule 23(b) and should now grant final certification. The Court's concern regarding the release of claims of putative class members in a prior lawsuit against Los Robles Regional Medical Center ("Los Robles"), in relation to determining superiority under Rule 23(b)(3), is addressed by a declaration from Plaintiff's counsel in *Munden v. Los Robles Regional Medical Center,* Marcus Bradley, explaining that the putative class in *Munden* does not include Trustaff employees who were temporarily assigned to work at Los Robles, and thus there is no overlap with the settlement class in this case or possible release of claims of *Munden* class members. Plaintiff also addresses the Court's comments herein regarding the reasonableness of Plaintiff's request for a service award within the Court's discretion to resolve any concerns regarding preferential treatment and adequacy.

2

Case No. 5:15-CV-01551-JGB-DTB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Accordingly, final approval of the proposed settlement is appropriate.

2  **II.    BACKGROUND**

3      **A.    The Pleadings and this Court's Jurisdiction**

4      On May 27, 2015, Plaintiff filed a Class Action Complaint ("Complaint")

5  against Trustaff and Los Robles in Ventura County Superior Court. Boucher Decl. ¶

6  6; Doc. 1-1. Plaintiff alleged eight causes of action: (1) Failure to Provide Reporting

7  Time Pay (Cal. Lab. Code §§ 218 & 1198); (2) Failure to Pay Overtime Wages at

8  the Appropriate Rate (Cal. Lab. Code §§ 510 & 1194); (3) Failure to Provide Meal

9  Periods (Cal. Lab. Code §§ 226.7 & 512); (4) Failure to Authorize and Permit Rest

10  Periods (Cal. Lab. Code § 226.7); (5) Failure to Furnish Complete and Accurate

11  Wage Statements (Cal. Lab. Code § 226); (6) Failure to Timely Pay Wages Upon

12  Termination or Resignation (Cal. Lab. Code §§ 201-203); (7) Violation of the

13  Private Attorneys General Act of 2004 (Cal. Lab. Code § 2699 *et seq.*); and (8)

14  Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*). *Id.*

15      On July 30, 2015, Trustaff filed its Answer in Ventura County Superior Court

16  (Doc. 1-4) and removed the lawsuit on July 31, 2015 to the United States District

17  Court for the Central District of California pursuant to the Class Action Fairness

18  Act, 28 U.S.C. § 1332(d) ("CAFA") Boucher Decl. ¶ 8; Doc. 1. On August 7, 2014,

19  Los Robles filed its Answer. Boucher Decl. ¶ 8; Doc. 10. Plaintiff filed a motion to

20  remand the case back to California state court on August 31, 2015 (Doc. 13), which

21  Trustaff opposed on September 4, 2015 (Doc. 15). Boucher Decl. ¶ 9. On September

22  24, 2015, the Court denied Plaintiff's remand motion. *Id.;* Doc. 17.

23      **B.    Early Litigation and Discovery Efforts**

24      Counsel for Plaintiff, Trustaff, and Los Robles met and conferred and

25  prepared a Rule 26(f) Scheduling Conference report filed with the Court (Doc. 18),

26  and exchanged information and documents about the claims and defenses through

27  Initial Disclosures. Boucher Decl. ¶ 10. Their counsel participated in a Scheduling

28  Conference on October 26, 2015, after which the Court entered a Civil Trial

1  Scheduling Order. *Id.;* Doc. 19. On December 7, 2015, the Court entered an order

2  granting a stipulated request by Plaintiff and Los Robles to dismiss putative class

3  and representative claims against Los Robles without prejudice in light of a putative

4  class action concurrently pending against Los Robles in California state court with

5  potentially overlapping claims. Boucher Decl. ¶¶ 7, 11; Doc. 24.

6      Between January and early April, 2016, Plaintiff, Los Robles, and Trustaff

7  served and responded to document requests and interrogatories and produced several

8  hundred pages of responsive documents each. Boucher Decl. ¶ 12. On March 9,

9  2016, the Court entered a Stipulated Protective Order Governing Discovery to allow

10 for the exchange of confidentially designated information and documents through

11 discovery. *Id.;* Doc. 27. Plaintiff noticed the deposition of Trustaff's Person(s) Most

12 Qualified for April 21, 2016, and Los Robles noticed Plaintiff's deposition for April

13 28, 2016. Boucher Decl. ¶ 12. During this time, Plaintiff cooperated by providing

14 responsive, non-privileged information and documents in her possession, custody,

15 and control to Defendants and prepared for her deposition, and Plaintiff's counsel

16 reviewed and analyzed the Defendants' document productions and discovery

17 responses in light of the claims and defenses asserted in the case.

18     In late March 2016, Plaintiff and Trustaff met and conferred over discovery

19 issues, and also agreed to the exchange of certain information and documents for

20 purposes of exploring resolution at a private mediation. Boucher Decl. ¶ 13. As part

21 of that process, counsel for Plaintiff and Trustaff have investigated the law as

22 applied to the facts discovered regarding the alleged claims of Class Members, and

23 alleged defenses thereto of Trustaff, and the damages and other monetary relief

24 claimed by Class Members by and through Plaintiff. *Id.*

25     **C.    Plaintiff and Trustaff's Mediation and Post-Mediation Efforts**

26     On April 8, 2016, Plaintiff and Trustaff participated in a private mediation

27 before the Honorable Carl J. West (Ret.) of JAMS in Los Angeles. Boucher Decl. ¶

28 14. Pursuant to that all-day mediation and further negotiations over a material term

of settlement involving Judge West that concluded on May 7, 2016, the proposed terms for this Settlement were reached. *Id.*

On April 25, 2016, the Court entered an order based on a stipulated request by Plaintiff, Trustaff, and Los Robles to vacate the briefing and hearing schedule on Plaintiff's class certification Motion, vacate the current pre-trial schedule, and set a deadline for filing Plaintiff's Motion for Preliminary Approval of Class Action Settlement. Boucher Decl. ¶ 15; Doc. 33. On June 1, 2016, the Court entered an order continuing the deadline for filing Plaintiff's Motion for Preliminary Approval of Class Action Settlement to July 25, 2016 on the request of Plaintiff and Trustaff. Boucher Decl. ¶ 15; Doc. 36. On July 20, 2016, the Court entered an order briefly continuing the deadline for filing Plaintiff's Motion for Preliminary Approval of Class Action Settlement by 14 days to August 8, 2016, on the request of Plaintiff and Trustaff. Boucher Decl. ¶ 15; Doc. 38.

### D.   Preliminary Approval and Settlement Administration

On August 25, 2016, the Court entered an order granting Plaintiff's motion for preliminary approval of the proposed settlement after hearing on the same. Boucher Decl. ¶ 15(a), Doc. 41. In its Preliminary Approval Order, the Court: (1) conditionally certified the Class and FLSA Subclass solely for the purpose of settlement; (2) appointed Plaintiff as Class Representative; (3) appointed Boucher LLP and Law Office of Sahag Majarian II as Class Counsel; (4) appointed CPT Group, Inc. as the "Settlement Administrator"; and (5) ordered dissemination of notice to the Settlement Class. *Id.*

On September 27, 2016, after obtaining leave of Court by stipulated request of all parties (including Los Robles), Plaintiff filed the First Amended Class Action Complaint: (1) adding a count under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* for proposed release thereof to Class members who opt-in to the FLSA Subclass; (2) revived certain class, collective, and/or representative claims alleged against Los Robles previously voluntarily dismissed without prejudice (Doc.

5

1  24), specifically those claims brought on behalf of 14 Class members employed by

2  Trustaff during the Class Period and assigned to work at Los Robles Regional

3  Medical Center, and modifying the class definition to match the defined settlement

4  class. Boucher Decl. ¶ 15(c) Ex. 2: SA ¶¶ 2.16, 2.17, 6.2; Docs. 42-43.

5         On November 2, 2016, CPT Group, Inc. administered the notice plan by U.S.

6  Mail to 2,042 Class members, providing Class members with an opportunity to

7  obtain monetary relief, to request exclusion, or to object to the settlement. *See*

8  Morales Decl. The fairness of this settlement is evidenced by the positive response

9  of the Class. As detailed in the Declaration of Mr. Morales, 30.31% of the Class is

10  participating in the settlement, with no objections to the Settlement and only 1.37%

11  opting out, which suggests favorable reception by the Class to this Settlement. *Id.*

12     **E.     Determination of Fairness of Settlement Following Investigation and Discovery**

13

14         Plaintiff's counsel conducted substantial investigation and discovery

15  concerning the claims, defenses, and alleged damages at issue in the lawsuit.

16  Boucher Decl. ¶¶ 4, 10-13, 16-17. Plaintiff and Trustaff also engaged in

17  negotiations, including the all-day mediation session on April 8, 2016 facilitated by

18  the Hon. Carl J. West (Ret.) of JAMS, who has extensive experience in labor and

19  employment litigation, which together with post-mediation efforts culminated in the

20  conditional agreement reflected herein through an arms-length negotiation in an

21  adversarial context following relatively contentious litigation. *Id.* ¶¶ 14, 16.

22         Plaintiff and her counsel are sufficiently familiar with the facts of this case

23  and the applicable federal and state laws to make an informed judgment as to the

24  fairness of the settlement. *Id.* at ¶ 17. Plaintiff is represented by competent counsel

25  and had the opportunity to consult with her counsel prior to the submission of this

26  Settlement for preliminary approval. *Id.* Plaintiff and her counsel believe the

27  Settlement is fair, adequate, and reasonable, and have arrived at this Settlement after

28  extensive arms-length negotiations, taking into account all relevant factors, present

Case No. 5:15-CV-01551-JGB-DTB

1   and potential. *Id.* ¶¶ 17-19.

2   **III.   THE SETTLEMENT**

3       **A.   Definition of the Proposed Class**

4          The proposed Class consists of "all persons employed by Trustaff Travel

5   Nurses, LLC as non-exempt, temporarily assigned employees who were provided

6   assignments at facilities in the State of California from May 27, 2011 through the

7   Preliminary Approval Date." SA ¶ 2.8. The Class includes those employees

8   assigned to work at Los Robles. SA ¶ 2.9. Plaintiff also seeks to represent a FLSA

9   "opt-in" subclass pursuant to 29 U.S.C. 216(b). *Id.* ¶¶ 2.16, 2.17, 10.7, 12.2.

10       **B.   Settlement Terms**

11          Under the proposed settlement, the claims of all Settlement Class Members

12   are to be released in exchange for Trustaff's payment of up to $3,775,000, exclusive

13   of Trustaff's employer-side payroll tax obligations ("Gross Settlement Amount").

14   SA ¶ 2.18. The GSA shall be deposited into a Qualified Settlement Fund ("QSF")

15   used to pay all Settlement Payments to Settlement Class Members who submit

16   timely valid Claim Forms, the proposed Class Representative Service Enhancement

17   payment, Claims Administration Costs payment, PAGA Penalty Payment to

18   Settlement Class Members and to the Labor and Workforce Development Agency

19   ("LWDA"), Settlement Class Members' share of employee payroll taxes on the

20   portion of the Settlement Payments that constitutes wages, and Class Counsel's

21   proposed Attorneys' Fees and Litigation Expenses Awards. *Id.* ¶¶ 2.18, 2.34, 10.2,

22   11.2. The GSA shall be allocated as follows:

23          <u>Settlement Payments</u>.  A portion of the Settlement Payments will be made

24   from the Net Settlement Amount ("NSA"), which is the GSA less the proposed

25   awards for Class Counsel Attorneys' Fees and Litigation Expenses, the proposed

26   Class Representative Service Enhancement Award, the proposed Claims

27   Administrator Costs, and the PAGA Penalty payment. SA ¶ 8.4. Another portion of

28   the Settlement Payments will be made from the 25% Class members' share of the

PAGA Penalty Payment. *Id.* Settlement Payments shall be distributed to Settlement Class members (i.e., those who do not request exclusion) who also submit timely valid Claim Forms. *Id*. Settlement payments will be calculated as follows:

*First,* each Settlement Class Member who submits a timely, valid Claim Form shall receive his/her respective share of the NSA based on his/her Work Weeks (the total number of weeks worked by Class members during the Class Period). *Id.* ¶¶ 8.4. A work week is defined as a fixed and regularly recurring period seven consecutive 24-hour periods totaling 168 hours. *Id.* ¶ 2.49. In the context of this case, "Work Weeks" means the number of such work weeks in which the Class Member worked for Trustaff at facilities in California during the Class Period, according to Trustaff's payroll records. *Id.* ¶ 8.4. Trustaff represented that, as of March 29, 2016, there were approximately 50,000 Work Weeks. *Id.* ¶ 2.49. That number increased to 58,652 workweeks as of the date Trustaff provided the Class List to CPT Group, Inc., October 11, 2017. Morales Decl. at ¶ 21. The Settlement Payment will be calculated by first deriving a Payment Ratio (total Work Weeks of each Class member divided by the total Work Weeks for all Class members), then multiplying that Payment Ratio to the NSA. *Id*. ¶ 8.4.

*Second,* each Settlement Class Member who submits a timely, valid Claim Form shall also receive his or her equal share of the $3,750 portion of the PAGA Penalty Payment. *Id.*

*Third*, participating Settlement Class Members are entitled to receive an additional amount under the proposed Settlement because Trustaff is required to fund a minimum of 60% of the NSA for payment to Settlement Class Members who submit timely, valid Claims regardless of the Claims rate. *Id*. ¶ 8.4. Thus, if the total value of timely submitted and valid Claims is ultimately determined to be less than 60% of the NSA, each Settlement Class Member will receive payment of his or her equal share of the difference calculated as follows: equal share of 60% of the Net Settlement Amount minus the total value of timely submitted and valid Claims. *Id.*

8

1    Here, if the Court grants all requested fees, costs, and the service award, the

2    NSA should be $2,763,750.00. The total value of claims made by all Settlement

3    Class Members who submitted timely, valid claims based on information provided

4    to date is $956,614.63, representing approximately 35% of the NSA, which means

5    those participating Settlement Class Members will receive an equal share of the

6    difference between 60% of the NSA and total value of claims, or: ($2,763,750.00 x

7    .6 = $1,658,250.00) - $956,614.63 = $701,635.37. Thus, the 619 Settlement Class

8    Members each should receive $1,133.49 *over* their original portion of the NSA

9    based on the Work Weeks ratio calculation and equal share of the PAGA Penalty

10   payment allocated to Settlement Class Members.

11   Settlement Payments shall be allocated as follows: thirty-three and a third

12   percent (33.3%) as wages subject to all applicable tax withholdings, thirty-three and

13   a third percent (33.3% as interest), and thirty-three and a third percent (33.3%) as

14   penalties. *Id*. ¶ 8.6. A portion of each Settlement Class Member's Settlement

15   Payment will be reduced by legally mandated deductions for employee-side payroll

16   taxes or other required withholdings, with an IRS Form W-2 issued for the one-third

17   portion that constitutes wages and IRS Form 1099 for the two-thirds portion

18   constituting interest and penalties. *Id.; see also* ¶ 10.2.

19   If a Settlement Payment check remains uncashed after 180 days from

20   issuance, the funds shall be sent by the Claims Administrator to the California

21   Department of Industrial Relations Unclaimed Wages Fund, for the benefit of the

22   employee. *Id*. ¶ 11.5. The Department will attempt to locate the employee and send

23   a letter to him or her with instructions to obtain the check, and, if unsuccessful in six

24   months, will forward the information and funds directly to the State Controller's

25   Office, where the money will be held for a minimum of twenty-five (25) years.

26   <u>Class Representative Service Enhancement Award</u>.  Subject to Court

27   approval, in exchange for Plaintiff's full, general release of all claims against

28   Defendants and waiver of California Civil Code section 1542, and for her time and

effort in prosecuting this matter on behalf of the proposed Class, Plaintiff will be paid a Class Representative Service Enhancement Award not to exceed $17,500 from the GSA. SA ¶¶ 2.41, 8.5.

Plaintiff has seriously considered the Court's comments regarding the amount requested and appreciates this opportunity to better explain why the amount is reasonable within the context of her case. Service or incentive awards are fairly typical in class action cases, and are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their former employers. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). Service awards to plaintiffs in wage and hour cases help to promote the policies underlying wage and hour laws. *See, e.g.,* Cal. Lab. Code § 90.5(a) ("[I]t is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions…."); *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981) (goal of FLSA is to protect workers from the poor wages and oppressive working hours that can result from the unequal bargaining power between employers and employees). These policies are realized when workers like Plaintiff step up on behalf of others to challenge employment practices and policies.

Some of the cases cited by the Court are distinguishable because they do not involve concerns of reputational risk that an employee bringing a class action against an employer or former employer in a specialized field might undertake. For example, *Custom LED, LLC v. eBay, Inc.*, 2014 WL 2916871 (N.D. Cal. June 24, 2014) involved breach of contract claims by sellers on eBay. The named plaintiffs in that case would likely not experience any reputational or financial harm from bringing a class action suit by other online websites, in the manner that Plaintiff feared she would suffer and appears to have suffered by other temp staffing agencies that place registered travel nurses in medical facilities across California. *See* Moppin Declaration at ¶ 18 and Majarian Declaration at ¶ 19. Plaintiff has suffered harm to

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  her reputation and a tangible loss of earning capacity as a result of filing suit for the

2  benefit of others. *Id.* Moreover, the eBay case does not involve the policy

3  considerations at play in wage and hour class actions. While one case cited by the

4  Court, *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),

5  was filed by stock brokers against their employer or former employer. that case is

6  also distinguishable because the financial industry is vastly bigger than the tiny

7  world of temporary travel nurses in California, and thus the reputational risk would

8  be smaller to stock brokers.

9       There is precedent, in other wage and hour class actions, for granting requests

10  within the range sought by Plaintiff. *See, e.g., Lee v. JP Morgan Chase*, 2015 WL

11  12711659 at *7 (C.D. Cal. April 28, 2015) (awarding $15,000 to one of the class

12  representatives in $2.4 million settlement, in light of time invested in the case and

13  general release of claims); *La Fleur v. Medical Management Intern, Inc*., 2014 WL

14  2967475 (C.D. Cal., June 25, 2014) (awarding $15,000 service awards to each

15  plaintiff in a $535,000 settlement in light of the general release of all claims, the

16  fiduciary responsibilities taken on behalf of other Class members, the greater

17  recovery by some Class members compared to plaintiffs own recovery, the risk of

18  an adverse judgment, the small impact of the award on other Class members'

19  recoveries, and the risks undertaken by plaintiffs regarding future job prospects);

20  *Garcia v. Gordon*, 2012 WL 5364575 (E.D. Cal. October 31, 2012) (awarding

21  $15,000 to four plaintiffs in a case with very similar terms to this case, a $3.75

22  million settlement of wage and hour class case with a 60% minimum payout of the

23  net settlement); *Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. October 18, 2014)

24  (awarding $15,000 to plaintiff in a $2 million settlement in light of efforts and

25  reputational risks); *Bellinghausen v. Tractor Supply, Co*., 306 F.R.D. 245 (N.D. Cal.

26  March 20, 2015) (awarding $15,000 service award in $1 million settlement in light

27  of reputational risks, general release, and involvement in the case); *Brawner v. Bank

28  of America*, 2016 WL 161295 (N.D. Cal. January 14, 2016) (awarding $15,000

1  service award in $562,500 settlement in light of time spent, work performed, risks

2  assumed, and fact that award would not reduce payments to class members).

3      Additionally, the significant monetary recovery for participating Class

4  members should be taken into account. Settlement Class members are not receiving

5  coupons or pennies on the dollar, but rather will receive a substantial recovery under

6  this settlement. In fact, certain Class members will receive *more* than Plaintiff given

7  that the highest recovery is $20,117.84. Morales Decl. at ¶ 23. The service award is

8  far less than 1% of the $3.775 million settlement and only slightly above 1% of the

9  60% minimum net settlement payout to participating Settlement Class members

10  ($1,658,250). Thus, the request should not defeat Plaintiff's adequacy or be

11  considered preferential treatment. Instead, it should be granted as reasonable.

12      Class Counsel Fees and Litigation Expenses Awards.  Subject to Court

13  approval, Class Counsel shall be entitled to receive reasonable attorneys' fees in an

14  amount not to exceed twenty-five percent (25%) of the GSA, which amounts to

15  $943,750, and litigation costs associated with Class Counsel's prosecution of the

16  case not to exceed $10,000[2]. SA ¶ 9.1. Plaintiff is submitting a detailed summary of

17  fees and costs in the Motion for Fees. Costs and Service Award.

18      Claims Administration Costs.  The Claims Administrator shall be paid from

19  the GSA for Claims Administration Costs, including but not limited to the costs of

20  claims processing, the creation and maintenance of an interactive settlement

21  website, and distribution of settlement funds, for a flat rate of $25,000. SA ¶¶ 2.7,

22  2.18, 9.1, 9.3; Morales Decl. at ¶ 24.

23      PAGA Penalty Payment.  $15,000 from the GSA shall be allocated to

24  penalties under PAGA, of which 75% or $11,250 shall be paid by the Claims

25  Administrator directly to the LWDA for enforcement of labor laws and education of

26  _____

27  [2] As set forth in the Motion for Fees, Costs and Service Award, Plaintiff's counsel

28  are only requesting reimbursement of $7,401.24 in costs. Boucher Decl. at ¶ 62.

Case No. 5:15-CV-01551-JGB-DTB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   employers. As stated above, the remaining 25% or $3,750 shall be distributed in

2   equal shares to Settlement Class Members who submit timely, valid Claim Forms as

3   part of their Settlement Payments, as described in the section entitled Settlement

4   Payments herein-above. SA ¶¶ 2.18, 2.31. 8.3.

5        <u>Employer's Share of Payroll Taxes</u>.  Trustaff shall be responsible for any

6   employer-side payroll taxes in addition to the GSA. SA ¶¶ 2.18, 2.34, 8.6. 11.2.

7        **C.   Release**

8        Upon final approval, the Settlement Class Members, including Plaintiff, will

9   release the Released Parties (Defendants and their past, present and/or future, direct

10  and/or indirect, parent companies, subsidiaries, affiliates, divisions, officers,

11  directors, managers, members, heirs, employees, agents, representatives, attorneys,

12  insurers, partners, investors, shareholders, predecessors, successors, and/or assigns)

13  from the Released Claims, which is defined to include those state and federal claims

14  asserted in the proposed First Amended Complaint against the Released Parties, or

15  that could have been asserted against the Released Parties based upon the facts

16  alleged in the First Amended Class Action Complaint to be filed in the Action, by

17  Plaintiff or any Settlement Class Member. SA ¶¶ 2.36, 2.37, 2.38, 2.39, 12.1, 12.2,

18  and 12.3. Plaintiff's release is a general release of all claims or potential claims

19  against the Released Parties, whether pled or not. SA ¶ 12.3. Upon final approval,

20  Plaintiff and Settlement Class Members shall expressly waive and relinquish the

21  provisions, rights, and benefits of Section 1542 of the California Civil Code or any

22  other similar federal or state law with respect to the Released Claims only. *Id*.

23       Plaintiff has confirmed that this settlement will *not* release or otherwise

24  impact the claims of putative class members in *Munden v. Los Robles Regional*

25  *Medical Center*, Case No. 56-2014-00454766-CU-OE-VTA, an earlier putative

26  class action lawsuit against Defendant Los Robles Regional Medical Center that

27  remains pending in California state court. As stated in the Declaration of Marcus

28  Bradley, who is counsel for Plaintiff in that action, the proposed *Munden* class is

limited to Los Robles employees only and does not include Trustaff employees who were temporarily assigned to work at Los Robles Regional Medical Center ("Los Robles"). There is no overlap because this settlement is with Trustaff, the settlement class is comprised only of Trustaff employees, and even though 14 Trustaff employees were temporarily assigned to work at Los Robles, the *Munden* class does not encompass those temporarily assigned travel nurses.

### D.   Class Notice, Claim Form, Opt-Out and Objection Rights

The Court approved the Notice plan in its September 12, 2016 Order (Doc 40), which required sufficient notice that would fully apprise Class members of key terms of the Settlement. The Notice contained information about the claims in the litigation and the terms of the settlement, explained the rights and release of claims under the settlement, the right to object to the settlement, the right to opt-out of the settlement, explained the calculation of settlement payments, included estimated individual settlement payment amounts, informed the Class of the deadline for filing a claim, requesting exclusion or objecting to the proposed settlement, and informed them of the date, time, and location of the February 13, 2017 final approval hearing. *See* Boucher Decl., ¶ 21 and Exhibit 3: Notice Packet.

On October 11, 2016, Settlement Administrator received data files from Trustaff's counsel for 2,042 Class members, detailing names, last known addresses, social security numbers, and the number of compensable workweeks for each member. Morales Decl., ¶ 5. A National Change of Address search was performed on October 26, 2016 to update the list with contact information for any individuals who moved in the past four years and notified the U.S. Postal Service of changes of address. *Id*. ¶ 7. On November 2, 2016, the Notice, Claim Form and Request for Exclusion Forms together with Business Reply Mail envelopes ("Notice Packet"), were mailed out to all Class members by First Class mail. *Id*. ¶¶ 6, 8.  On December 2, 2016, reminder postcards were mailed out to 1,700 Class members who had not yet responded. *Id*. ¶ 9. Skip traces were performed on all 340 Notice Packets

returned to the Settlement Administrator to locate better addresses and, as a result of such efforts together with forwarding addresses, 251 Notice packets were re-sent. *Id*. ¶¶ 12, 13. A total of 116 Notice Packets remain undeliverable to date despite these efforts. *Id*. A total of 1,926 Class members were successfully sent Notice Packets representing a 94.32% success rate.

Notice of final judgment will be posted to the settlement website created and maintained by the Settlement Administrator, where other information and documents relating to the settlement are posted for Class members to review and access: *www.trustaffsettlement.com*. *Id*. ¶ 10. A toll free hotline is also being maintained for Class members to call the Settlement Administrator with questions about the settlement. *Id*. ¶ 9.

**E.      Class Response to Proposed Settlement**

The Settlement Administrator did not receive any written objections to the settlement as of January 9 , 2017, the date of Mr. Morales's declaration. Morales Decl., ¶ 14. A total of 619 valid claims and 28 request for exclusion have been received, some of which were deemed deficient and requests to cure were sent out. *Id.* ¶¶ 16-20. Assuming the ten remaining deficient claims are cured and accepted, approximately 30.31% of Class members will participate in the proposed settlement with an average settlement payout estimated to be $2,678.92 within a range that extends up to $20,117.84 based on the number of compensable workweeks and the 60% NSA minimum payout, if given final approval by the Court. *Id.* ¶ 23. The estimated claimed amount from the settlement will be 60% of the NSA, or $1,658,250.00, which represents a substantial percentage of the settlement money going to participating Class members.

**IV.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.**

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of any settlement of claims on behalf of a certified class. Before a court approves a

settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009); *see also Dunk v. Ford Motor Company*, 48 Cal.App.4th 1794, 1801 (1996), quoting *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).

The approval of a proposed class action settlement "is committed to the sound discretion of the trial judge." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). However, in exercising this discretion, the trial court must give "proper deference to the private consensual decision of the parties" as "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027. Generally, a district court's review of a class action settlement is "extremely limited." *Id.* at 1026. The court considers the settlement as a whole and lacks authority to "delete, modify or substitute certain provision." *Id.*, quoting *Officers for Justice*, 688 F.2d at 630.

In the Ninth Circuit, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008). "This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court, Central District of California, which encourages facilitating the settlement of cases." *Id.,* citing various local rules of the United States District Court, Central District of California relating to settlement.

The process for approval of a class action settlement consists of three steps. First, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *See* Manual for Complex Litigation § 21.632 (4th ed. 2004). Next,

16

the class is given notice of the litigation and the final hearing so as to advise them of the settlement and the ability to object or opt out of the settlement. *Id.* § 21.633. Last, the final fairness hearing allows individuals to be heard in support of, and in opposition to, the proposed settlement and requires the court's final determination whether the proposed settlement is "fair, reasonable, and adequate." *Id.* § 21.634.

The first two steps are substantially complete. On September 12, 2016, this Court granted Plaintiff's request for conditional class certification after determining for settlement purposes that the settlement class met the requirements of Rule 23(a) and (b), and granted Plaintiff's motion for preliminary approval on the basis that the proposed settlement appeared to be fair and reasonable on its face. Doc. 40. Trustaff's counsel timely provided notice to state authorities pursuant to CAFA and the 90-day period for comment has lapsed without objection. *See* Drechsler Decl. After determining notice had inadvertently not been provided to the U.S. Attorney General's office, Trustaff promptly issued notice to that office on January 12, 2017, sent a supplemental notice on January 13, 2017, and followed up by phone to determine whether that office intends to comment on this settlement. *Id.* This late mailing is not fatal to the approval of this settlement, nor does it mean Class members may opt out under 28 U.S.C. § 1715(e)(1), provided that the Court allows 90 days from the last mailing to elapse before ordering final approval. *Adoma v. University of Phoenix, Inc.,* 913 F.Supp.2d 964, 972-973 (E.D. Cal. Dec. 20, 2012), citing *In re Processed Egg Products Antitrust Litig.,* 2012 WL 2885918 (E.D. Pa. 2012). If the U.S. Attorney General responds before the final approval hearing, Plaintiff and Trustaff will update the Court. Additionally, the Settlement Administrator formatted the Notice Packet and provided direct mail notice to Class members. Morales Decl., ¶¶ 5-13. Notice reached 94.32% of the Class. *Id.*

Thus, this Court must now make a final determination of the fairness, reasonableness, and adequacy of the settlement by balancing several factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity,

17

and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004). Plaintiffs submit that a review of those factors should result in final approval herein being granted. Indeed, the Court has evaluated these factors and granted preliminary approval based on the same. Doc. 40.

### A.    The Strength of Plaintiff's Case

Although Plaintiff maintains the merit of her claims against Defendants, she also recognizes the significant defenses to certification and liability of these claims. Trustaff reserved the right to file a motion pursuant to Rule 23(d) of the Federal Rules of Civil Procedure to obtain an order that a class cannot be certified, a motion for summary judgment and/or adjudication on some or all of Plaintiff's claims, and a motion to strike PAGA claims. Doc. 18 at p. 6. Trustaff contended it properly and timely paid all non-exempt employees, including Plaintiff, for all regular and overtime hours worked. Doc. 36 at p. 3. It also contended that Trustaff employees, including Plaintiff, were paid for all hours worked and were provided with all legally-mandated meal and rest breaks in accordance with the California Labor Code. *Id.* at p. 2. Moreover, Trustaff contended that the alleged misconduct did not injure or otherwise damage employees, including Plaintiff. *Id.* Trustaff further contended that the case is not suitable for class certification because individualized inquiries would predominate, precluding class certification, and not suitable for representative action treatment under PAGA. *Id.* Plaintiff considered these defenses to assess the strength of Plaintiff's class and representative claims.

Plaintiff has provided the Court with a detailed analysis of each of the class and representative action claims, identifying the strengths and weaknesses of each claim, in Mr. Boucher's declaration. The settlement is, thus, a compromise. Plaintiff

18

took into account the Trustaff's contentions regarding the risks that the class would not be certified on a contested motion, the risks Trustaff contends exist regarding liability and proof of damages, and other defenses asserted. Boucher Decl., ¶ 19. Additionally, Plaintiff also considered the time delay and financial repercussions of a trial and appeal. *Id.* Despite Trustaff's defenses, Plaintiff has secured a substantial monetary recovery for Class members that supports final approval.

### B.  The Risks, Expense, Complexity, and Duration of Further Litigation

As set forth above, the risks in a wage and hour class action cases are significant and often complex. This case is not certified on a contested motion and Trustaff contested every aspect of this class and representative case. Thus, Plaintiff considered the possibility that that if a settlement were reached after additional years of litigation, including possible appeals, the great expenses and attorneys' fees of litigation would reduce the amount of funds available to Plaintiff and Class Members for settlement. Boucher Decl., ¶ 19.

The expense of further litigation is also significant. Although the parties engaged in a significant amount of formal and informal discovery and class-wide data analysis, the parties had not yet commenced deposition discovery at the time of mediation. Boucher Decl., ¶ 12. Upon notice of the deposition of Trustaff's person(s) most qualified to testify under Rule 30(b)(6), counsel for Trustaff advised that the witnesses were located out of state and thus travel expenses would be required to complete the depositions. Plaintiff would also be required to testify at deposition regarding her claims, thus requiring further expense. Additionally, Plaintiff has not filed her motion for class certification. Moreover, trial preparation remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiff and/or adverse summary adjudication ruling. As a result, the parties stood to incur considerable additional attorneys' fees and costs through trial and possibly beyond to appeals. Therefore, this settlement avoids

the risk of non-recovery and the additional, accompanying expense associated with wage and hour class action litigation. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. November 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor supports final approval.

### C. The Risk of Maintaining Class Action Status Throughout Trial

As noted above, Plaintiff has not filed her motion for class certification in light of the proposed settlement and efforts to obtain court approval of the proposed settlement. Plaintiff contends she has a reasonable chance of certifying at least some claims in this case. However, Trustaff indicated an intent to file motions for summary judgment and a motion under Rule 23(d) that a class cannot not be certified, which presents a substantial risk that class action status might not be maintained through trial absent settlement. This factor also supports final approval.

### D. The Amount Offered in Settlement

The Court must consider whether the settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009), citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).

Plaintiff's counsel have calculated the maximum damages to the Class members, exclusive of interest, to be approximately $6,247,911 should the case proceed to trial. Boucher Decl. § 4. Trustaff contests liability, as well as the propriety of certification, and is prepared to vigorously oppose certification and to defend against Plaintiff's claims if the action is not settled. Given the maximum potential damages and substantial risks in this case, the $3,775,000 maximum settlement sum represents a 60.4% recovery of the exposure value and is within the range of possible approval. *Id.*

The significant risk that this Court may deny class certification is obviated by the settlement, particularly in light of certification standards under Federal Rule of Civil Procedure, Rule 23, as articulated by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011). Even if Plaintiff were to obtain certification and prevail on the merits, a legitimate controversy exists as to each cause of action and Plaintiff recognizes that proving the amount of damages due to each individual Class Member would be an expensive and time-consuming process. Boucher Decl. § 4. Continued litigation would inevitably delay payment to the Class; the elimination of delay and further expense weighs in favor of approval. *Id*.; *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

**E.     Sufficient Discovery and Investigation Was Completed to Warrant Settlement.**

The stage of the proceedings and the amount of discovery completed is an important factor which the Courts consider in determining the fairness, reasonableness, and adequacy of a settlement. Plaintiff's counsel conducted meaningful discovery. The litigation reached a stage where the parties certainly have a clear view of the strengths and weaknesses of their cases. Plaintiff conducted significant investigation and discovery prior to the private mediation session that started on April 8, 2016, when the parties participated in private, all-day mediation before experienced employment class action mediator and former California Superior Court judge, Carl J. West. Boucher Decl., ¶¶ 14. Plaintiff's counsel conducted an investigation into the claims alleged, interviewing Plaintiff regarding the facts alleged in the complaint and conducting legal research regarding application of the applicable California Labor Code sections. *Id.*, ¶ 4. Additionally, Plaintiff's counsel participated in numerous conferences and meet and confer meetings with Trustaff's counsel, prepared and served formal and informal written discovery requests, and conducted a detailed evaluation of time records and payroll data provided by Trustaff, which involved review by Plaintiff's counsel regarding a

statistical analysis of the time records.  *Id.* at ¶¶ 10-13, 17. Based on the information and record developed through investigation and discovery, Plaintiff's counsel was able to act intelligently and effectively in negotiating the settlement. *Id*. at ¶ 17.

### F.   Plaintiff's Counsel is Experienced and Endorses This Settlement.

Experienced counsel, operating at arm's length, have weighed all of the foregoing factors and endorse the proposed settlement. As the courts have explained, the view of the attorneys actively conducting the litigation, is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc*., 630 F.Supp. 482, 488 (E.D. Pa. 1985). Plaintiff's counsel has experience not only in class actions but specifically in wage and hour class actions. Boucher Decl., § 4, Exs. 4-5; Majarian Decl., ¶¶ 13-16. Plaintiff's counsel are experienced and qualified to evaluate the class claims and viability of the defenses. *Id.* The recovery for each Class member is substantial, given the risks inherent in litigation and the defenses asserted. The proposed settlement is fair, adequate and reasonable and in the best interests of the Class. *See* Boucher Decl., ¶ 41 and Majarian Decl., ¶ 20.

### G.   Presence of a Governmental Participant

There is no direct governmental participant in this case. However, as noted above, the LWDA will receive a payment of $7,500 should the Court grant final approval. This payment comports with PAGA payments in other class action settlements. *See, e.g., Lazarin v. Pro Unlimited, Inc*., Case No. C11-03609 HRL, 2013 WL 3541217 at *2 (N.D. Cal. July 11, 2013) (approving payment of $7,500 to the LWDA from $1.25 million common fund settlement). Additionally, under the proposed settlement, Trustaff was required to provide notice of the proposed settlement required pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, on the appropriate state and federal officials and has done as to state officials; to date no governmental entity has timely intervened or objected to the proposed settlement.

### H.   Reaction of the Class to the Proposed Settlement

The deadline to object or opt out expired as of January 3, 2017. As of the date

of Mr. Morale's declaration, no Class member objected to the settlement to date. Morales Decl., ¶ 14. This militates in favor of final approval of the settlement. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 118 (2nd Cir. 2005); *see also Churchill Vill., supra,* 361 F.3d at 577 (district court did not abuse discretion in approving settlement with 500 opt-outs and 45 objections out of approximately 90,000 notified class members.) Here, there are *no objections* and only 28 requests for exclusion out of the 2,042 Class members. By contrast, a total of 619 claims have been received. Assuming all deficient claims are cured and accepted, approximately 30.31% of Class members will participate in the proposed settlement with an average settlement payout estimated to be $2,678.92 within a range that extends up to a significant $20,117.84 if given final approval by the Court. Overall, this is a solid, positive reaction from Class members to the settlement, which supports a finding of fairness and reasonableness.

## V. THE PROVISIONAL CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES SHOULD BE MADE FINAL.

Plaintiff respectfully requests that the Court enter an order making final its certification of the proposed Class for settlement purposes. When presented with a proposed settlement, the Court must ascertain whether the proposed settlement satisfied the requirements of Rule 23. *Hanlon,* 150 F.3d at 1019, 1022. In the Court's September 12, 2016 Order, the Court determined that for the purposes of settlement, the proposed Class and FLSA Subclass met the requirements of Rule 23(a) and (b), and granted Plaintiff's motion for conditional class certification. Doc. 40. The circumstances considered by the Court at that time remain the same. Plaintiff has addressed the Court's concerns regarding superiority by sworn declaration from plaintiff's counsel in the *Munden* action explaining that the proposed class in that case does not overlap with the proposed settlement class in this case. Plaintiff has also explained the reasonableness of her requested service

award. Accordingly, for the reasons set forth in the Court's Preliminary Approval Order, final certification of the proposed class should be ordered for settlement purposes under Rule 23(e).

## VI.    THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE.

Adequate notice is critical to court approval of a class settlement under Rule 23(e). *Hanlon*, 150 F.3d at 1025. The threshold requirement concerning the sufficiency of class notice is whether the means to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). Here, the Court-approved notice by First Class mail using addresses maintained by Trustaff, with change of address searches, skip traces, and re-mailings implemented, appears to be the best notice practicable. Notice was delivered to 1,926 Class members out of a total of 2,042, a 94.32% success rate. Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,* 361 F.3d at 575. The response rate also supports a finding that those who responded understood the terms of proposed settlement submitting claim forms or requests for exclusion for whatever reason, and a finding that the majority of those who responded to the Notice agreed to participate therein. *Hanlon,* 150 F.3d at 1025-1026.

## VII.   CONCLUSION

The settlement provides a substantial benefit to participating Class members and is fair, reasonable, and adequate. Plaintiff requests that the Court conditionally grant this motion now, and enter the requested orders after the 90 day period elapses for the U.S. Attorney General to comment on this settlement under CAFA.

1   DATED:  January 17, 2017          BOUCHER LLP

2

3                                                By:       /s/ Raymond P. Boucher

4                                                          RAYMOND P. BOUCHER
                                                           SHEHNAZ M. BHUJWALA
5                                                LAW OFFICES OF SAHAG MAJARIAN II

6                                                          SAHAG MAJARIAN

7                                                *Attorneys for Plaintiff and the Class*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:15-CV-01551-JGB-DTB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT