JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 15-1551 JGB (DTBx)** | Date | February 13, 2017 |
|---|---|---|---|
| Title | ***Andrea Moppin v. Los Robles Regional Medical Center et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ / I. VAZQUEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Shehnaz M. Bhujwala | Sarah N. Drechsler |
| | Jason W. Kearnaghan |

Proceedings:    **Order: (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 46-1); (2) GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Attorneys' Fees (Dkt. No. 47-1); and (3) DISMISSING the Action WITH PREJUDICE**

Before the Court is Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 46), and Plaintiff's Motion for Attorneys' Fees (Dkt. No. 47). Defendant does not oppose the Motions. The Court held a final approval hearing on February 13, 2017. For the reasons that follow, the Court GRANTS Plaintiff's Motion for Final Approval of Class Action Settlement and GRANTS IN PART Plaintiff's Motion for Attorneys' Fees. Implementation of this Order is stayed until April 13, 2017. The Parties are ordered to notify the Court in writing if any objections are made to the Class Action Settlement by any federal official before April 13, 2017.

### I. BACKGROUND

**A. Procedural History**

On May 27, 2015, Plaintiff Andrea Moppin ("Plaintiff" or "Class Representative") filed this putative wage-and-hour class action in state court against Defendants Los Robles Regional Medical Center ("Los Robles") and Trustaff Travel Nurses, LLC ("Trustaff"). (Complaint, Dkt. No. 1- 1.) Plaintiff, a former employee of Defendants, alleged the following causes of action: (1) failure to provide reporting time pay; (2) failure to pay overtime wages at the appropriate rate; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to furnish complete and accurate wage statements; (6) failure to timely pay wages upon termination or resignation; (7) violation of the Private Attorneys General Act ("PAGA") Cal. Labor Code § 2689 et seq.; and (8) Unfair Business Practices. (See Complaint.) Trustaff answered Plaintiff's

Complaint on July 30, 2015 and removed the action to this Court on July 31, 2015 pursuant to the Class Action Fairness Act ("CAFA"). (Not. of Removal, Dkt. No. 1). On August 7, 2015, Los Robles filed its answer. (Dkt. No. 10.) Plaintiff filed a motion to remand the case to state court on August 31, 2015, which the Court denied on September 24, 2015. (Dkt. No. 17.) On December 4, 2015, Los Robles and Plaintiff filed a joint stipulation to release all putative class claims and representative claims against Los Robles without prejudice, while still maintaining Plaintiff's individual claims against Los Robles. (Dkt. No. 23.) The Court granted this stipulation on December 7, 2015. (Dkt. No. 24.)

On April 15, 2016, Plaintiff filed a notice of class-wide settlement and a joint stipulation to vacate the trial dates. (Dkt. No. 32.) The Court approved the stipulation, vacated the pretrial and trial dates, and ordered Plaintiff to file a motion for preliminary approval of the class action settlement by June 13, 2016. (Dkt. No. 33.) Plaintiff and Trustaff twice stipulated to continue the deadline so that they could finalize the settlement agreement, which the Court approved. (Dkt. Nos. 36, 38.) Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement and Conditional Class Certification on August 8, 2016. (Dkt. No. 39.) The Court held a preliminary approval hearing on September 12, 2016 and granted Plaintiff's Motion on August 25, 2016. ("Order," Dkt. No. 40.)

In that Order, the Court conditionally certified the Class and the Fair Labor Standards Act ("FLSA") Subclass solely for the purpose of settlement, appointed Plaintiff as class representative, appointed Bouncer LLP and the Law Office of Sahag Majarian II as Class Counsel, appointed CPT Group, Inc. ("CPT") as the Settlement Administrator, and ordered dissemination of notice to the Settlement Class. (Id.) Plaintiff was directed to file the proposed First Amended Complaint within 14 days of the Order. (Id. at 15.) Within 15 days of filing the FAC, Trustaff was ordered to provide CPT a Class List containing pertinent information of Class Members, including the sum of all work weeks for the Class. (Id.) CPT was directed to mail the initial notice within 14 days of receiving the data on class members from Trustaff and a reminder notice within 30 days of the initial mailing. (Id. at 14.) The deadline for Class Members to submit objections, disputes, requests for exclusion, and claim forms was set at 60 days after the initial mailing ("Response Deadline"). (Id.)

On September 27, 2016, after obtaining leave of Court by stipulated request of all parties, Plaintiff filed the First Amended Class Action Complaint ("FACAC"). (Dkt. No. 43.) The FACAC adds a claim under the FLSA, 29 U.S.C. §§ 201, et seq. for proposed release thereof to Class Members who opt-in to the FLSA Subclass, revives certain class, collective, and/or representative claims alleged against Los Robles previously voluntarily dismissed without prejudice, and modifies the class definition to match the defined settlement class. (Id.)

On January 17, 2017, Plaintiff filed a motion for settlement approval of class action settlement, ("Motion," Dkt. Nos. 46, 46-1), and a motion for attorneys' fees, costs and service award. ("Fees Motion," Dkt. Nos. 47, 47-1.) In support of her Motion, Plaintiff filed the following documents:

**CIVIL MINUTES—GENERAL**                   Time in Court: 00:19 min.
Initials of Deputy Clerk: MG/iv

- Declaration of Raymond P. Boucher (Boucher Decl., Dkt. No. 46-2), attaching
  - Joint Stipulation of Class Settlement ("Settlement," <u>Id.</u> at Ex. 2, 52-98),
  - Notice, Claim Form and Request for Exclusion Forms together with Business Reply envelopes ("Notice Packet," <u>Id.</u> at Ex. 3, 100-109),
  - copies of the Boucher, LLP firm resume and Mr. Boucher's curriculum vitae ("Boucher Docs.," <u>Id.</u> at Exs. 4, 5, 110-141),
  - survey conducted by The National Law Journal containing sample billing rates for California Lawyers ("NLJ Survey," <u>Id.</u> at Ex. 6, 142-148), and
  - summary of Boucher, LLP's expenses during the course of this litigation ("Boucher Expenses," <u>Id.</u> at Ex. 7, 149-151);
- Declaration of Sahag Majarian II (Majarian Decl., Dkt. No. 46-3), attaching
  - summary of the office of Ms. Majarian's expenses ("Majarian Expenses," <u>Id.</u> at Ex. 1, 8-9), and
  - the Laffey Matrix fee schedule to determine reasonable hourly rates ("Laffey Matrix," <u>Id.</u> at Ex. 2, 11-12);
- Declaration of Andrea Moppin (Moppin Decl., Dkt. No. 46-4);
- Declaration of Abel E. Morales on behalf of CPT (Morales Decl., Dkt. No. 46-5), attaching the list of Class Members who submitted Requests for Exclusion ("Exclusion Requests," <u>Id.</u> at Ex. A, 9-10);
- Declaration of Sarah Drechsler Regarding CAFA Notices (Drechsler Decl., Dkt. No. 46-6), attaching
  - sample CAFA Notice [1] ("CAFA Notice," <u>Id.</u> at Ex. 1, 4-6),
  - Notice sent to the U.S. Attorney General on January 12, 2017 ("AG Notice," <u>Id.</u> at Ex. 2, 7-9), and
  - Supplemental Notice that Trustaff's counsel sent to the U.S. Attorney General on January 13, 2017 ("AG Supp. Notice," <u>Id.</u> at Ex. 3, 10-12); and
- Declaration of Marcus Bradley (Bradley Decl., Dkt. No. 46-7), attaching
  - original complaint filed in <u>Munden v. Los Robles Regional Medical Center dba Los Robles Hospital & Medical Center</u>, presently pending in the Superior Court of California for the County of Ventura, Case No. 56-2014-00454766-CU-OE-VTA, ("<u>Munden</u>"), ("Munden Complaint," <u>Id.</u> at Ex. 1, 4-23), and
  - First Amended Complaint filed in <u>Munden</u> ("Munden FAC," <u>Id.</u> at Ex. 2, 24-45.)

In support of Plaintiff's Motion for Fees and Costs, Plaintiff filed the following documents:

---

[1] The Notice of Proposed Class Action Settlement Pursuant to CAFA sent from Trustaff's counsel to the Attorney Generals for 50 states on August 12, 2016, included a copy of the operative Complaint, the Joint Stipulation of Class Action Settlement and supporting documents, including the proposed Notice of Proposed Class Action Settlement, and the Notice of Preliminary Approval of Class Action Settlement. However, Exhibit 1 does not attach the aforementioned enclosures to the Declaration of Sarah Drechsler as they are otherwise included in the Parties' filings. (Drechsler Decl. II ¶ 2.)

**CIVIL MINUTES—GENERAL** Time in Court: 00:19 min.
Initials of Deputy Clerk: <u>MG</u>/iv

- Declaration of Raymond P. Boucher (Boucher Decl. II, Dkt. No. 47-2), attaching
  - Court's September 12, 2016 Order granting preliminary approval as Exhibit 1 (Id. at Ex. 1),
  - Settlement as Exhibit 2 (Id. at Ex. 2),
  -  Notice Packet as Exhibit 3 (Id. at Ex. 3),
  - Boucher Documents as Exhibits 4 and 5 (Id. at 4, 5),
  - NLG Survey as Exhibit 6 (Id. at Ex. 6), and
  - Boucher Expenses as Exhibit 7 (Id. at Ex. 7) ;
- Declaration of Sahag Majarian II (Majarian Decl. II, Dkt. No. 47-3), attaching
  - Majarian Expenses as Exhibit 1 (Id. at Ex. 1), and
  - the Laffey Matrix as Exhibit 2 (Id. at Ex. 2);
- Declaration of Andrea Moppin (Moppin Decl. II, Dkt. No. 47-4);
- Declaration of Abel E. Morales on behalf of CPT (Morales Decl. II, Dkt. No. 47-5), attaching the Exclusion Requests as Exhibit A (Id. at Ex. A);
- Declaration of Sarah Drechsler Regarding CAFA Notices (Drechsler Decl. II, Dkt. No. 47-6), attaching
  - CAFA Notice as Exhibit 1 (Id. at Ex. 1),
  - AG Notice as Exhibit 2 (Id. at Ex. 2), and
  - Supplemental AG Notice as Exhibit 3 (Id. at Ex. 3); and
- Declaration of Marcus Bradley (Bradley Decl. II, Dkt. No. 47-7), attaching
  - Munden Complaint as Exhibit 1 (Id. at Ex. 1), and
  - Munden FAC as Exhibit 2 (Id. at Ex. 2.)

## B. The Settlement Agreement

### 1. The Terms

Plaintiff submitted the Parties' Settlement Agreement as Exhibit 2 to her Motion for Final Approval.  ("Settlement," Dkt. No. 46.) While the Settlement is unchanged from the terms of the proposed class settlement that was preliminarily approved on September 12, 2016, the Court summarizes the key provisions again here. The proposed settlement class consists of "all persons employed by Trustaff Travel Nurses, LLC as non-exempt, temporarily assigned employees who were provided assignments at facilities in the State of California from May 27, 2011 through September 12, 2016" and an opt-in FLSA subclass—a total of 2,042 members (collectively, "Class"). (Mot. at 6; Settlement at ¶ 2.8.) The FLSA Subclass is defined as "[a]ll Settlement Class Members who timely return their respective Claim Forms and thereby are deemed to have opted into the action for purposes of FLSA, and thereby released any claims such as FLSA Settlement Class Members may have under the FLSA as to the Released Federal Law Claims Only." (Settlement § II.17.)

In the Settlement, Trustaff continues to deny liability for all claims alleged in the FACAC. (Settlement § IV.)  In exchange for the release of class and representative claims alleged in the FACAC, as well as the claims that could have been based on the same set of facts under California and Federal law, Trustaff agrees to pay up to $3,775,000.00, ("Gross Settlement

Amount") exclusive of its obligation to pay employer-side payroll taxes. (Mot. at 6.) Class Members also agree to expressly waive rights and benefits they may otherwise have had under Section 1542 of the California Civil Code unless they formally opt-out of the Settlement. (Settlement at ¶ 12.1.) The specific claims, alleged or potentially alleged, Class Members agree to release pursuant to the Settlement are as follows:

- State Law Claims
    - (a) all claims related to unpaid compensation (i.e., wages, overtime, meal and rest period premiums, damages, interest, attorneys' fees, etc.) (Settlement at §XII, ¶ 12.1);
    - (b) all claims for unpaid overtime and straight time wages under California Labor Code sections 510, 1194, 1197, and 1198 and any other applicable sections, as well as under Industrial Welfare commission Wage Orders 4-2001 and 5-2001 (Id.);
    - (c) all claims for failure to provide meal and rest periods under California Labor Code sections 226.7, 512, and 1198 and any other applicable sections, as well as under Industrial Welfare commission Wage Orders 4-2001 and 5-2001 (Id.);
    - (d) all claims for unreimbursed business-related expenses under California Labor Code section 2802 and any other applicable sections (Id.);
    - (e) all claims for "waiting time" penalties for late paid or unpaid wages under California Labor Code section 203 and any other applicable sections (Id.);
    - (f) all claims for inaccurate or deficient wage statements under California Labor Code section 226 and any other applicable sections (Id.);
    - (g) claims based on (a) through (f) as a predicate act for alleged violations of California Business and Professions Code section 17200, et seq. (Id.);
    - (h) all claims under California's Private Attorneys General Act ("PAGA") and all relief sought thereunder during the statutory period of March 24, 2014 to the date of Preliminary Approval (Id.); and
    - (i) any premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting based on or related to the above claims  (Id.);
- Federal Law Claims
    - Any and all claims alleged or potentially alleged that accrued during the Class Period related to compensation which arise under or are predicated upon the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (Id. at ¶ 12.2.)

Class Representative Andrea Moppin also agrees to release any and all claims arising out of or related to the Lawsuit or her employment or assignment by Trustaff. (Id. at ¶ 12.3.)[2] As to PAGA

---

[2] Class Representative releases the aforementioned claims as well as any claims for wrongful discharge of employment, termination in violation of public policy, discrimination, harassment, retaliation, failure to provide reasonable accommodation, failure to engage in a good faith

**CIVIL MINUTES—GENERAL**   Time in Court: 00:19 min.
Initials of Deputy Clerk: MG/iv

penalties, $15,000 will be deducted from the Gross Settlement Amount for settlement of any and all Alleged Claims for which penalties under PAGA, Labor Code sections 2698, et seq. may be sought or are otherwise available. (Settlement at ¶8.3.) The PAGA Penalty Payment allocates $11,250 (75%) to the Labor and Workforce Development Agency ("LDWA") for the enforcement of labor laws and education of employers, and $3,750 (25%) distributed in equal shares, to the Settlement Class Members who submit timely, valid Claims. (Id.)

The Settlement provides that Class Counsel, Raymond Boucher and Shehnaz Bhujwala of Boucher LLP and Sahag Majarian II of the Law Offices of Sahag Majarian II, shall receive 25% of the Gross Settlement Amount – $943,750 – as an award of attorneys' fees and up to $10,000 in litigation expenses. (Id. § IX.1.) The Settlement also provides that an estimated $25,000 of the Gross Settlement Amount will be used for claims administration costs. (Id.) Additionally, Trustaff has agreed to pay Plaintiff a Service Enhancement Payment of up to $17,500 for her work as the Class Representative. (Id. § VIII.5.)

Thus, the Net Settlement Amount—the amount from which funds will be distributed to Settlement Class Members who submit timely, valid claims—will be approximately $2,763,750.

---

interactive process, breach of contract (express and implied), breach of covenant of good faith and fair dealing, promissory estoppel, intentional or negligent infliction of emotional distress, fraud, negligent or intentional misrepresentation, negligent or intentional interference with contract or prospective economic advantage, unfair business practices, defamation, libel, slander, negligence, personal injury, assault, battery, invasion of privacy, false imprisonment, conversion, and disability benefits. (Settlement at §XII, ¶ 12.3.) Class Representative also agrees to release any and all claims for any violation of any federal, state, or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Equal Pay Act, the FLSA, except as prohibited by law, the Fair Credit Reporting Act, the Employee Retirement Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, except as prohibited by law, the Sarbanes-Oxley Act of 2002, the California Family Rights Act, the California Labor Code, the California Industrial Welfare Commission Wage Orders, the California Business and Professions Code, the California Unruh Act, the California Fair Employment and Housing Act, any and all claims for violation of the federal, or any state, constitution, any and all claims for any other laws and regulations relating to employment or employment discrimination, harassment or retaliation, any and all claims for monetary recovery and personal or individual relief, and personal or individual relief including premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting based on the claims. (Id.) Class Representative does not release any claim or right for workers' compensation benefits, any claim or right that may arise after the execution of the Stipulation, any claim or right regarding compliance with the Stipulation or any claim or right that is not waivable as a matter of law. (Id.) Class Representative also expressly waives any rights under California Civil Code section 1542. (Id.)

---

**CIVIL MINUTES—GENERAL**                Time in Court: 00:19 min.
Initials of Deputy Clerk: MG/iv

(Id. § II.26.) The payment for each individual Settlement Class Member who timely submits a valid claim will be calculated by dividing the number of work weeks all Class Members worked in California during the class period by the number of work weeks the individual Settlement Class Member worked and multiplying this number by the Net Settlement Amount. (Id. § VIII.4.) Additionally, Trustaff agrees that it is required to fund a minimum of 60% of the Net Settlement Amount for payment to Settlement Class Members, regardless of the claims rate. (Id.) This means that if the total value of timely submitted and valid claims is less than 60% of the Net Settlement Amount, each Settlement Class Member will also receive payment of his or her equal share of the difference between the total value of timely, valid claims and 60% of the Net Settlement Amount. (Id.)

### 2. Performance of the Agreement

As discussed, the Court approved the Notice plan in its September 12, 2016 Order. (Order.) The Notice Plan was found to provide Class Members with sufficient notice of the key terms of the settlement. (Id.) The Notice contained information about the claims in the litigation and the terms of the settlement, explained the rights and release of claims under the settlement, the right to object to the settlement, the right to opt-out of the settlement, explained the calculation of settlement payments, and included estimated individual settlement payment amounts. (Id.) The Notice also informed the Class of the deadline for filing a claim, requesting exclusion or objecting to the proposed settlement, and informed them of the date, time, and location of the February 13, 2017 final approval hearing. (See Notice Packet.)

On October 11, 2016, the Settlement Administrator received data files from Trustaff's counsel for 2,042 Class Members, detailing names, last known addresses, social security numbers, and the number of compensable workweeks for each members. (Mot. at 14; Morales Decl.) A National Change of Address search was conducted on October 26, 2016 to update the list with respect to anyone who moved in the past four years. (Morales Decl. ¶ 7.) On November 2, 2016, the Notice, Claim Form and Request for Exclusion Forms together with Business Reply envelopes were mailed to all Class Members by First Class Mail. (Id. ¶¶ 6, 8.) On December 2, 2016, reminder postcards were mailed out to 1,700 Class Members who had not responded. (Id. ¶ 9.) Skip traces were performed on all 340 Notice Packets returned to the Settlement Administrator to locate better addresses, and as a result, 251 Notice Packets were resent. (Id. ¶¶ 12, 13.)  A total of 116 Notice Packets remain undeliverable to date. (Id.) A total of 1,926 Class Members were successfully sent Notice Packets representing a 94.32% success rate. (Mot. at 15.)

Notice of final judgment will be posted to the settlement website created and maintained by the Settlement Administrator, in addition to other information and documents relating to the settlement at www.trustaffsettlement.com. (Morales Decl. ¶ 10.) A toll free hotline is also being maintained for Class Members to call the Settlement Administrator and ask questions. (Id. ¶ 9.)

As of January 9, 2017, the Settlement Administrator did not receive any written objections from Class Members. (Id. ¶ 14.) A total of 681 valid claims and 28 requests for exclusion have been received. (Id. ¶¶ 16-20.) Requests to cure were sent out with respect to claims and the

requests for exclusion deemed deficient. (Id.) Assuming that the ten remaining deficient claims are cured and accepted, approximately 33.34% of Class Members will participate in the proposed settlement with an average settlement payout estimated to be $2,678.92 within a range that extends up to $20,117.84 based on the number of compensable workweeks and the 60% NSA minimum payout, if given final approval by this Court. (Id. ¶ 23.) The estimated claimed amount for the Settlement is estimated to be 60% of the NSA, which is $1,658,250.00. (Id.)

## II. LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  See id.  "The settlement must stand or fall in its entirety."  Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).  Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure.  While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees.  "Rather, [Rule 54(d)(2) ] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award ... [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award."  MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees.  See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund

doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## III. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

The Declaration of Sarah Dechsler indicates that Trustaff provided notice on August 12, 2016 via certified U.S. mail to the offices of the attorney generals for each of the 50 states. (Dechsler Decl. ¶ 2; CAFA Notice.) As of January 13, 2017, no attorney general for any state has objected to the settlement. (Id. ¶ 3.) Due to inadvertence, notice was not sent to the office of the United States Attorney General until January 12, 2017. (Id. ¶ 4; AG Notice.)

Accordingly, the Court finds that the notice requirements of 28 U.S.C. § 1715 have been satisfied. The Order, however, must be stayed until April 13, 2017, which is 90 days after the U.S. Attorney General received Notice.

//

**CIVIL MINUTES—GENERAL**

## B. Rule 23

### 1. Rule 23(a) and (b)

The Order granting preliminary approval conditionally certified both the Rule 23 Settlement Class and the FLSA Subclass. (Order at 6-10.) Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." <u>Adoma</u>, 913 F. Supp. 2d at 974; <u>see also</u> <u>Harris v. Vector Marketing</u>, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); <u>In re Apollo Group Inc. Securities Litigation</u>, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012).

Here, the class has not materially changed since the Court's September 12, 2016 Order. (Order at 6, 10; Settlement at ¶2.8, 2.17.) Further, the Declaration of counsel for Plaintiffs in <u>Munden</u>, Marcus Bradley, explains that the putative class in <u>Munden</u> does not include Trustaff employees who were temporarily assigned to work at Los Robles. (<u>See, e.g.</u>, Bradley Decl. ¶ 8.) Since there is no risk that the <u>Munden</u> class overlaps with Class Members, the Court's concern that certifying the class here may result in releasing certain claims asserted by <u>Munden</u> class members is assuaged. All the criteria for conditional class certification, therefore, remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### 2. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that that Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the Class Notice sent to potential class members. (Order at 13.) The Class Notice was timely sent via mail to all potential Class Members, and it provided information on the Final Approval Hearing, objecting, opting out, and submitting a Claim Form. (Boucher Decl., Notice Packet; Morales Decl. ¶¶ 3-19.) Further, potential class members had access to a toll-free number and website to obtain information about the Settlement. (Morales Decl. ¶¶ 9, 10.) The Court finds that Notice to the Settlement Class was proper.

## C. Fair, Reasonable, and Adequate Under Rule 23(a)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." <u>Officers for Justice v. Civil Service Com.</u>, 688

**CIVIL MINUTES—GENERAL**

F.2d 615, 624 (9th Cir. 1982).  The Court's inquiry is procedural in nature.  Id.  Under Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed, and the stage of the proceedings;
> (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and
> (8) any opposition by class members.

Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits and the range of possible recovery. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009).  In determining the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Plaintiff's counsel acknowledges that full recovery for the class for wage and hour claims would face many obstacles. For one thing, Trustaff continues to deny liability. (Settlement at § IV.) Defendants' defenses posed threats to the viability of Plaintiff's and the Class Members' claims. For example, Defendants refute that wages are owed to Plaintiff and Class Members. (Id.) As to the meal break claim, Defendants argued that meal breaks were waivable and that their employees had waived such breaks. (Id.)

Plaintiff's claims also present myriad evidentiary challenges that make prevailing at trial uncertain. For instance, Plaintiff anticipates the meal break claim could present the most difficult issues of proof regarding liability and damages "as Defendants had records of seemingly compliant meal break waivers." (Id.) Plaintiff also recognizes her theory of underpayment of penalty payments based on the calculation of the regular rate of pay is novel, and anticipates a 25% chance of prevailing. (Id.)  For claims predicated on Defendants' "willful" violation, Plaintiff acknowledges a finding of willfulness is a difficult burden.

There is also a significant risk that, if the litigation is not settled, Plaintiff may not have been able to certify the class in order to proceed as a class action.  See, e.g., Marlo v. United Parcel

Service, Inc., 251 F.R.D. 476, 488 (C.D. Cal. 2008) (decertifying overtime wage class after discovery, motion practice and trial preparations revealed that predominance of common issues was not satisfied). Indeed, Plaintiff acknowledges the difficulty of prevailing at class certification because it may be difficult to establish commonality and typicality for the reporting time claim across medical facilities with varying policies and practices. (Boucher Decl. ¶ 27.)

Because the Settlement represents a significant recovery for the class, particularly in view of the challenges Plaintiff would likely face in this litigation going forward, the Court finds this factor weighs in favor of approval.  See Barbosa v. Cargill Meat Solutions Corp., 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required.  "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

As discussed, Defendants continue to contest liability. Additionally, Plaintiff acknowledges the risks in wage and class action cases are significant and often complex. (Mot. at 24.) The class has yet to be certified, and Trustaff contests every aspect of this class and representative case. (Id.) The expense of further litigation is also significant, and the parties had not yet commenced deposition discovery at the time of mediation. (Id.) Trustaff also indicated that witnesses were located out of state, which would increase the expense required to complete the depositions. (Id.) Thus, in order for the class to obtain a remedy, the class likely would have had to litigate certification, dispositive motion practice, and trial.  Absent settlement, the litigation in this case would have been hard-fought.

Accordingly, the Court finds that this factor weighs in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout Trial

Because Plaintiff has not yet filed a motion for class certification, there is a risk that the class would not be certified.  Furthermore, Trustaff indicated an intent to file motions for summary judgment and a motion under Rule 23(d) that a class cannot be certified. The individualized inquiries that may be required to determine meal and rest break periods (and adequacy of Defendants' claimed meal break waivers), overtime compensation, and which policies or practices across different medical facilities applied to each Class Member's claims, among others, present a substantial risk that Plaintiff may not be able to establish predominance for purposes of class certification. This factor weighs in favor of approving the settlement. See Gardner v. GC Servs., LP, 2012 WL 1119534, *4 (S.D. Cal. 2012) ("[B]ecause settlement was reached prior to a

hearing on Plaintiff's motion for class certification, settlement was reached at a time when there was still a risk that the class would not be certified by the Court.").

### 4. Amount Offered in Settlement

The Parties agreed to a Gross Settlement Amount of $3,775,000.00 (Settlement at ¶ 2.18.) This amount includes Class Counsel's Attorneys' Fees, Litigation Expenses, Claims Administration Costs, the PAGA Penalty Payment, all Settlement Payments to Settlement Class Members who submit timely, valid Claims, and the Service Enhancement Payment to the Class Representative. (Id.) The Gross Settlement Amount does not include Trustaff's share of payroll taxes, which Trustaff will pay separately. (Id.) As to PAGA Penalty Payments, Trustaff will pay $15,000.00 for settlement of any and all alleged claims for which penalties under PAGA, Labor Code sections 2698, et seq., may be sought. (Id. at ¶ 8.3.) Under Labor Code section 2699(i), the PAGA Penalty Payment will be allocated as follows: $11,250.00 (75%) to the LWDA, and $3,750.00 (25%) to the Settlement Class members who will receive equal shares upon submission of valid and timely claims. (Id.) The portions of PAGA Penalty Payments distributed to Class Members is not deemed wages for purposes of each individual Class Member's total recovery. (Id.) Plaintiff's counsel estimates that the average settlement payment each Class Member will recover is $2,678.92, within a range that extends up to $20,117.84 based on the amount on the number of compensable workweeks and the 60% NSA minimum payout. (Mot. at 20; Morales Decl. ¶ 23.)

Plaintiff's counsel calculated the maximum damages to the Class Members, exclusive of interest, to be approximately $6,247,911.00 if Plaintiff and Class Members prevailed on all of their claims at trial. Considering the significant risks of maintaining class action status throughout trial, and the evidentiary issues for purposes of establishing Trustaff's liability, the settlement sum representing a 60.4% recovery of the exposure value provides substantial benefits to the class. See Linney, 151 F.3d at 1242 ("'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" (quoting City of Detroit v. Grinnell Corp, 495 F.2d 448, 455 n.2 (2d Cir. 1974))). Accordingly, this factor weighs in favor of approving the settlement.

### 5. Extent of Discovery Completed and the Stage of the Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. Here, the Parties have engaged in significant discovery. Plaintiff conducted significant investigation and discovery prior to the April 8, 2016 all-day mediation in front of an experienced employment class action mediator. (Boucher Decl. ¶ 14.) Plaintiff's counsel conducted an investigation into the claims alleged, interviewed Plaintiff regarding the facts alleged in the complaint and conducted legal research to consider the merits and applicable defenses prior to the mediation. (Boucher Decl. ¶ 4.) Plaintiff's counsel participated in numerous conferences with Trustaff's counsel, prepared and served formal and informal written discovery requests, and engaged in a detailed evaluation

of time records and payroll data provided by Trustaff, which involved a statistical analysis of the time records. (Boucher Decl. ¶¶ 10-13, 17.) The Parties separately served and responded to written discovery, including document requests and interrogatories, and produced several hundred pages of responsive documents each. (Id. at ¶ 12.)

Based on these facts, the Court finds that discovery was sufficiently advanced to allow the parties to make an informed decision about settlement. See DIRECTV, Inc., 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed)).  This factor favors settlement.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.  See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  In re Pacific Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel has substantial experience litigating class actions—and specifically, substantial experience litigating wage and hour class action claims. (See Boucher Docs.; Boucher Decl.; Majarian Decl.) The Court accords weight to Class Counsel's recommendation that the Court approve this settlement, since class counsel is familiar with this litigation and its likelihood of success during litigation and trial.  Class Counsel understood the complex risks and benefits of settlement and concluded that the Settlement was a reasonable recovery that confers a substantial benefit on the Class Members.  (Boucher Decl. ¶¶ 31, 32, 16, 18, 13.)

Moreover, settlements are afforded a presumption of fairness if the negotiations occurred at arm's length.  4 Newberg on Class Actions § 11.41 (4th ed. 2013).  Here, the Settlement was reached through the efforts of counsel following a mediation conducted by experienced mediator Judge West, who has substantial experience in labor and employment litigation.  (Id. at ¶ 16.) This factor weighs in favor of approval.

//

---

**CIVIL MINUTES—GENERAL** Time in Court: 00:19 min.
Initials of Deputy Clerk: MG/iv

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. However, the LWDA will receive a payment of $7,500 under the Settlement. This payment comports with PAGA payments in other class action settlements. See, e.g., Lazarin v. Pro Unlimited, Inc., Case No. C11-03609 HRL, 2013 WL 3541217 at *2 (N.D. Cal. July 11, 2013). Additionally, Trustaff provided notice of the proposed settlement to the appropriate state and federal officials as required under CAFA, 28 U.S.C. § 1715. To date, no governmental entity has intervened or objected to the proposed settlement. (Mot. at 27.) This factor weighs in favor of approval.

### 8. Any Opposition by Class Members

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

The deadline to object or opt out expired as of January 3, 2017. (Morales Decl. ¶ 14.) As of January 9, 2017, no Class Member had objected to the settlement. Out of 2,042 Class Members, and 681 total claims received, there are only 28 requests for exclusion. (Id. at ¶ 15; Exclusion Requests.) Given the low percentage of opt outs and the absence of any objections, the Court finds this factor weighs in favor of final approval.

After considering all of the relevant factors, the Court finds seven factors strongly favor approval in this analysis.[3] In particular, the fact that there were a low number of opt outs and no objections strongly supports a finding of reasonableness. After reviewing all of the evidence presented, the Motion, and the arguments presented at the final approval hearing, the Court finds that the settlement is "fair, reasonable and adequate to all concerned parties." Ficalora v. Lockheed California Co., 751 F.2d 995, 996 (9th Cir. 1985). Accordingly, the Court approves the Settlement.

## C. Fees and Costs

### 1. Attorneys' Fees

Class counsel also requests approval of its fees and costs. Courts are obliged to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 941 (9th Cir. 2011).

---

[3] The seventh factor weighs less strongly in favor of approval because the presence of a government entity is somewhat tenuous in this case.

**CIVIL MINUTES—GENERAL**  Time in Court: 00:19 min.
Initials of Deputy Clerk: MG/iv

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942. Here, Class Counsel requests that the attorneys' fees be calculated as a percentage of the original gross settlement amount. (Fees Mot.) Specifically, the Settlement Agreement provides that the award of attorneys' fees will not exceed 25% of the $3,775,000.00 gross settlement amount.

"[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)). Moreover, courts in this circuit routinely award percentages equal to approximately one-third of the settlement amount. See, e.g., Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 448-50 (E.D. Cal. 2013); Estrella v. Freedom Fin. Network, LLC, No. CV 09–03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012); Stuart v. Radioshack Corp., No. C–07–4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010).

Where a court applies a percentage to calculate fees, it "should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." In re Toys R Us-Delaware, Inc., 295 F.R.D. 438, 460 (C.D. Cal. 2014). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).

Here, Class Counsel requests a fee award of $943,750.00, which represents 25% of the gross settlement amount of $3,775,000.00, which will be split between Plaintiff's co-counsel where Boucher, LLP will receive 50% and the Law Offices of Sahag Majarian II will receive 50%. (Fees Mot. at 5.) A review of Class Counsel's billing indicates that Boucher LLP expended 503.1 hours, and anticipates spending 35 hours of additional time on the final approval, totaling an estimated $339,421.00, (Boucher Decl. ¶ 56; Boucher Decl. II ¶ 58.) Mr. Majarian expended a total of 136.20 hours over 27 months, totaling $95,340 at an hourly rate of $700. (Majarian Decl. ¶ 7.) The total time spent on this matter is approximately 639.9 hours for a total lodestar of $396,261. (Fees Mot. at 31.)

"[C]ourts often consider the following factors when determining the benchmark percentage to be applied: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's lodestar." Craft v. Cnty. of San Bernardino, 624 F. Supp. 2d 1113, 1116–17 (S.D. Cal.2008); see also Fischel v. Equitable Life Assur. Society of U.S., 307 F.3d 997, 1008 (9th Cir.2002) (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 6 (9th Cir.1975)). The Court now turns to analyzing these factors to determine if the fees requested are reasonable.

First, Class Counsel achieved a good result and generated a significant benefit for the Class amounting to the Net Settlement Amount of approximately $3,775,000.00 for approximately 2,042 members. Based on the claims rate, the 681 class members who submitted valid and timely claims will receive $956,614.63 in the aggregate, with an average award of $2,678.92 each. (Morales Decl. ¶¶ 22-23.)  Since Trustaff has agreed to pay a minimum of 60% of the NSA regardless of the number of claims, the Settlement Class Members who submitted valid claims thus far each stand to receive $1,133.49 over their original portion of the NSA based on the work weeks ration calculation and their equal share of the PAGA Penalty Payment. (Mot. at 14.) This not only represents a substantial recovery but is also a significant benefit for Class Members who would face an expensive and time-consuming process if the claims were individually litigated.

Second, litigating wage and hour class actions is no small feat, and Plaintiff recognizes significant defenses to certification and liability of these claims. In fact, Plaintiff's counsel estimated that for claims requiring individualized proof, Plaintiff only had a 20-25% chance of prevailing. (Mot. at 14-18.) Further, Plaintiff presented a highly novel legal theory for calculating overtime, meal break, and rest break damages.(Id.) As such, this case involved complex issues which required substantial skill, particularly in light of the uncertainty in California law as it related to Plaintiff's meal break claims. Further, there are no objections to the hours performed or the billing rates, and the Court finds these to be reasonable.

Third, Class Counsel have represented that the work performed in this litigation precluded work on other cases. (Boucher Decl. ¶ 48.) Because Class Counsel took this matter on a contingency-basis, they are only paid if they favorably resolve a case through settlement or trial. Here, Class Counsel will receive compensation approximately two years after the case was originally filed. (Id. ¶ 59.) The considerable financial risks of accepting cases on a contingency basis favors allowing a lodestar multiplier here because "(1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." Fischel v. Equitable Life Assur. Soc'y of U.S., 307 F.3d 997, 1008 (9th Cir. 2002).

That said, the fee requested represents over twice the amount to which Class Counsel would be entitled if the lodestar was used to determine their fees. Comparing the lodestar against the requested fee amount of $943,750.00 would result in a multiplier of 2.38 of Class Counsel's collective lodestar. (Boucher Decl. ¶ 61.) Courts often cross check the fees requested on a percentage of the overall settlement amount with the lodestar to inform the determination of reasonableness. Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 968 (9th Cir. 2009); Spann v. J.C. Penney Corp., No. SACV120215FMOKESX, 2016 WL 5844606, at *13 (C.D. Cal. Sept. 30, 2016) ("One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method."); Id. ("For example, a cross [-] check using the lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."); Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 255 (2001).

While the percentage award requested in this case is commensurate with the percentage-of-the-benefit awards made in other wage and hour actions in this District,[4] this high multiplier is significant and warrants close scrutiny since the district court has a fiduciary role for the class at the fee-setting stage when fees are to come out of the settlement fund. Both Class Counsel's hourly rates and the number of hours expended appear reasonable in light of their experience and the demands of this litigation. In addition, significant risks attend advancing costs on a case offering little certainty of ultimate success on the merits which are not captured in the lodestar amount. Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir.1990) ("[The] benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). When the fees requested would otherwise be distributed among the Class Members awarding 25% of the Net Settlement Amount, however, strikes the Court as excessive under these circumstances.

The Parties settled relatively early on in the proceedings as neither a motion for class certification nor a motion for summary judgment was filed or heard. Indeed, the cases where courts have accepted multipliers exceeding 2 involved many years of litigation and multiple dispositive motions or a highly complex field like antitrust or securities litigation. Yet, the lodestar amount of $396,261.00 does not sufficiently account for the financial risks borne by Class Counsel. In view of the 50-50 fee-splitting arrangement between Plaintiff's co-counsel, the typical common fund attorneys' fees awards, and similar California class action wage and hour settlements, the Court is persuaded that a percentage of the common fund is an appropriate measure of attorneys' fees.  As such, the Court finds a 20% figure more appropriate, and therefore awards $755,000 for attorneys' fees.

### 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985).  "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual

---

[4] Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002) (surveying multipliers in 23 class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); McKenzie v. Fed. Exp. Corp., No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012)(finding a benchmark award of $2,062,500 representing a multiplier of roughly 3.2 was within a reasonable range); Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); Hopkins v. Stryker Sales Corp., 2013 WL 496358, *4 (N.D. Cal.2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); Spann, 2016 WL 5844606, at *14 (finding a multiplier of 3.07 fair and reasonable, and "well within the range for reasonable multipliers).

equipment are typically recoverable." Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class Counsel now seeks $7,401.24 in costs.  (Fees Mot. at 31.)  Class counsel provides a sufficiently itemized breakdown of the expenses in this case, which included analysis, strategy, attorney meetings, case management and administration, client communications and meetings, court appearances, discovery, and document production and review. (Boucher Decl. II ¶ 57.) All of those fees appear reasonable and are typically recoverable in litigation, and the Court therefore approves the suggested amount for costs.  Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement).

### 3. Claims Administrator

CPT charged $25,000.00 in administration fees.  (Boucher Decl. ¶ 66; Morales Decl.)  That fee is reasonable in light of the tasks undertaken by the Administrator and when compared with fees charged by other claims administrators.  See, e.g., Elliott v. Rolling Frito-Law Sales, LP, No. SACV 11–01730 DOC (ANx), 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (approving claims administrator fees totaling $36,500 in employment action). The Court, therefore, approves the award of $25,000.00 in fees to CPT.

### 4. Class Representative Enhancement

The trial court has discretion to award incentives to the class representatives.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329.  The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). In the Order granting preliminary approval, the Court expressed serious concerns that the $17,500 enhancement signals undue preferential treatment.

In support of the Motion, Ms. Moppin submitted a declaration explaining the depth of her participation in the case; she explains that she spent approximately 90 hours of her time on this case since it was filed, (Moppin Decl. ¶ 13), participated in various in-person meetings and telephone conferences, searched her own files and documents, including her email accounts, to gather information, and provided class counsel with hundreds of pages of records related to her employment with Trustaff and Los Robles.  (Id. at ¶¶ 12, 13.)

The service enhancement requested represents far less than one percent of the total settlement of $3.775 million, and around one percent of the guaranteed net settlement payout to Class Members. Plaintiff's willingness to serve as Class Representative greatly increased the

likelihood that members of the Class would recover anything at all because it is likely that no action would have been taken by Class Members individually. (Boucher Decl. ¶ 43.) The Settlement entitles some claimants to a recovery of upwards of $20,000 based on their number of compensable workweeks. (Morales Decl. ¶ 23.) The fact that some Class Members will recover more than Ms. Moppin's requested service enhancement without facing any of the risks borne by Ms. Moppin persuades the Court that the enhancement amount is reasonable. (Morales Decl. ¶ 23.)

The Court is convinced that the requested Service Enhancement Award is not excessive under the circumstances. Throughout the litigation Ms. Moppin faced the financial risk of paying her own costs if she did not prevail. (Mot. at 25.) She also signed a general release for any and all claims related to her employment with Defendants, which is broader in scope than the claims released by Class Members. (Settlement at § 12.3.) And she forfeited these individual claims "because of the greater impact that it could have by helping former co-workers who dealt with the same wage and hour issues [she] did." (Id. at ¶ 19.)

Further, Ms. Moppin continues to face financial risk inherent to suing a former employer in a highly narrow and specialized field. She explains in her declaration that her role as Class Representative in this case exposes her to significant stigma, loss of benefits, and potential job insecurity. (Id. at ¶ 22.) In fact, since the news of the settlement became public, "[she] ha[s] been contacted by former colleagues about the lawsuit," and worries that the news of the public settlement may spread to future employers and threaten her job prospects in the small community of travel nurses in California. (Id. at ¶ 18.) Her fear of adverse employment ramifications is legitimate because job assignments for registered travel nurses in California come from only a handful of temp agencies that assign travel nurses to a small community of medical facilities. (Mot. at 10.)

Given the settlement amount, the expected recovery to class members, the significant reputational risk Ms. Moppin faces in the small community of travel nurses, and the time Ms. Moppin committed to this case, the Court finds that an incentive award of $17,500 is reasonable, if on the higher side of incentive awards, under the circumstances. Elliott v. Rolling Frito-Law Sales, LP, No. SACV 11-01730 DOC (ANx), 2014 WL 2761316, at *11 (C.D. Cal. June 12, 2014) (noting that awards of "$5,000 [are] traditionally considered reasonable in similar jurisdictions.").

## IV. CONCLUSION

For the reasons stated above, the Court:

(1) GRANTS final settlement approval;
(2) GRANTS the request for attorneys' fees and AWARDS class counsel attorneys' fees in the amount of $755,000.00 from the gross settlement amount;
(3) GRANTS the request for costs and AWARDS class counsel costs in the amount of $7,401.24 from the gross settlement amount;
(4) GRANTS the request for a $25,000 payment to CPT;

(5) GRANTS the request for service award and AWARDS $17,500 from the gross settlement amount to the Class Representative, Andrea Moppin; and

(6) DISMISSES the First Amended Complaint WITH PREJUDICE.

Implementation of this Order is stayed until April 13, 2017. The Parties are ordered to notify the Court in writing if any objections are made to the Class Action Settlement by any federal official before April 13, 2017.

**IT IS SO ORDERED.**